**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| Gomez,<br><br>Plaintiff,<br><br>v.<br><br>Schaffel, *et al.*,<br><br>Defendants. | Case No.: 1:26-cv-01445-MJM |

# DEFENDANT VERTEX TL LLC'S MOTION FOR SANCTIONS UNDER RULE 11 AND MEMORANDUM IN SUPPORT


**I. INTRODUCTION.......... 1**
**II. RELEVANT RECORD.......... 4**
A. The state court first warned Gomez against duplicative and vexatious filings.......... 4
B. Gomez continued litigating the same entitlement issue in state and federal court.......... 5
C. The state court then warned Gomez specifically against another collateral challenge.......... 6
D. The SAC repeats the adjudicated premise.......... 6
E. Gomez adds unsupported accusations of bribery, fraud, extortion, and money laundering.......... 7
**III. ARGUMENT.......... 9**
A. The state warnings are direct evidence of notice, repetition, and the need for deterrence.......... 9
B. The direct attack on the writ ruling violates Rule 11(b)(2).......... 10
C. The criminal accusations violate Rule 11(b)(3).......... 11
D. The safe-harbor requirements are satisfied.......... 14
E. A focused sanction and filing condition are necessary to deter repetition.......... 14
**IV. CONCLUSION.......... 15**

# I. INTRODUCTION

Twice, the Circuit Court for Baltimore City warned Plaintiff Fausto Gomez against using new filings to relitigate matters already decided in the tax-sale action. The first warning came on March 20, 2026. Declining to order sanctions prospectively, the court cautioned that it would be inclined to grant future requests for sanctions if Gomez continued to file items that were facially deficient, were "duplicative of issue already adjudicated," or "otherwise appear to have been filed with vexatious or dilatory intent." **Exhibit A** at 1. Gomez filed his original federal complaint twenty-five days later.

The state litigation continued. Gomez filed *another* emergency motion and an untimely supplemental memorandum. The Circuit Court rejected his arguments and reaffirmed that the deedholders were entitled to the corrected writ. On August 3, 2026, the court issued a second and more specific warning. It cautioned Gomez against "further baseless attempts to collaterally challenge the Court's Orders" and identified attorney's fees and a prefiling injunction as potential consequences. **Exhibit B** at 1. The next morning, Gomez filed the Second Amended Complaint (the "SAC") in this action. ECF No. 11.

The SAC repeats the precise proposition the Circuit Court had rejected. It alleges that Vertex and others procured a writ "to which they were not entitled," ECF No. 11 ¶ 179, treats the state-court writ proceedings as predicate acts of extortion and racketeering,

*id.* ¶¶ 163–97, and seeks a federal declaration condemning the Clerk's issuance of writs to parties supposedly not entitled to them. *Id.* at 40. It then escalates that collateral challenge into accusations that Vertex, its principal, and its counsel cultivated public officials through financial and political benefits, paid public employees, committed wire fraud and extortion, distributed criminal proceeds, and laundered illicit cash. *Id.* ¶¶ 48, 51, 68, 136, 142–55, 172, 174, 179, 182, 184–91. Gomez identifies *no* evidence of a bribe, corrupt agreement, fraudulent communication, criminal proceeds, or laundering transaction. His pleading instead states that the supposed evidence remains to be sought in discovery. *Id.* ¶¶ 68, 166.

While the state warnings do not, standing alone, establish that every allegation in the federal action is false, they do establish notice. They also provide objective evidence that the federal filing continues a repetitive course the state court had already identified and twice warned against. Rule 11 permits the Court to consider that evidence. The Fourth Circuit has held that repeated filings and the circumstances surrounding them are proper indicators of an improper purpose. *In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990) (explaining that "[r]epeated filings, the outrageous nature of the claims made . . . are all appropriate indicators of an improper purpose"); *Green v. Foley*, 907 F.2d 1137 (4th Cir. 1990) (per *curiam*) (unpublished table decision) (explaining that "[t]he deterrence rationale of the Rule also suggests that the court should consider the entire case, including related state court proceedings").

Vertex therefore moves under Federal Rule of Civil Procedure 11(c)(2) for focused sanctions against Gomez. The Court should find that Gomez violated Rule 11(b)(1) by

continuing a repetitive and objectively abusive effort to collaterally attack the state orders, Rule 11(b)(2) by asking this Court to reject a state-court entitlement ruling without a nonfrivolous legal basis, and Rule 11(b)(3) by adding accusations of bribery, wire fraud, extortion, criminal proceeds, and money laundering without evidentiary support. The Court should order Gomez to remove those allegations and theories, award Vertex the fees and expenses directly caused by the violations, and impose a narrowly tailored filing condition requiring leave of court before Gomez files another paper in this action that asks the Court to invalidate or disregard an order entered in the state tax-sale case.

## II. RELEVANT RECORD

### A. The state court first warned Gomez against duplicative and vexatious filings.

Vertex acquired the tax-sale certificate for 229 North Monroe Street and filed this tax-sale foreclosure action, *Vertex TL LLC v. Gomez*, No. C-24-CV-24-004451 (Md. Cir. Ct. Balt. City) (the "State Case"). On March 6, 2025, the Circuit Court entered judgment foreclosing Gomez's right of redemption. ECF No. 11 ¶ 23. Vertex later received a deed and conveyed the property to Mohamed Dahan Shahbain, Hadaf Anwar Alsamet, and Mohamed Abdo Alnisafi on December 3, 2025. *Id*. ¶¶ 19–21, 29. Gomez *himself* confirms that, after the conveyance, "Vertex had no possessory rights to the Property." *Id.* ¶ 29.

The Circuit Court quashed a January 23, 2026 writ that had issued in Vertex's name. *Id*. ¶¶ 30–31. The Deedholders then requested a corrected writ in their own names

on March 4, and the Clerk issued it that afternoon. *Id.* ¶ 32. Gomez moved to quash the corrected writ. The Circuit Court denied that motion and held that the deedholders were entitled to possession under Md. Code Ann., Tax-Prop. § 14-850. **Exhibit D** at 1.

A companion order entered the same day put Gomez on express notice concerning further filings. Declining Vertex's request that sanctions issue prospectively, the court stated that it would nonetheless be inclined to grant a future sanctions request if Gomez continued filing papers that were facially deficient, duplicated an adjudicated issue, or appeared to have a vexatious or dilatory purpose. **Exhibit A** at 1. The warning was directed to Gomez's repeated filings in the same tax-sale case and to his attempts to revisit issues the court had resolved.

### B. Gomez continued litigating the same entitlement issue in state and federal court.

The first warning did not end the pattern. Gomez filed an emergency motion to alter or amend the denial of his motion to quash. He then filed an emergency supplemental memorandum thirty-three days after the underlying order, although the applicable period was ten days. The Circuit Court struck that memorandum as untimely. **Exhibit C** at 1.

A second order entered that day rejected Gomez's renewed merits argument. It held that a deedholder who acquired title following a tax sale is not required to intervene in order to obtain a writ of possession, and it again rejected Gomez's effort to invalidate the corrected writ. **Exhibit E** at 1–2. The court noted that Gomez's new position conflicted with the position he had taken earlier in the same case. Id. at 2.

While those proceedings were unfolding, Gomez shifted the same dispute into federal court. He filed the original complaint on April 14, 2026, after the March warning and before the Circuit Court ruled on his emergency motion. The federal action named Vertex, Schaffel, Tessler, the deedholders, court personnel, Sheriff's Office personnel, and others. The SAC now seeks damages and declaratory relief on the premise that the foreclosure, corrected writ, and resulting possession were unlawful.

### C. The state court then warned Gomez specifically against another collateral challenge.

On August 3, 2026, the Circuit Court denied Vertex's sanctions motion without prejudice. **Exhibit B** at 1. The denial was not an endorsement of Gomez's filings. The court expressly cautioned Gomez against another baseless collateral challenge and stated that future relief could include fees and a prefiling injunction. *Id.*

The state docket reflects that the August 3 order was electronically filed and electronically served at 3:32 p.m. **Exhibit B** at 1. Gomez filed the SAC at 10:10 a.m. on August 4, less than nineteen hours later. ECF No. 11. Vertex does not ask the Court to infer when Gomez opened or read the order. The docket proves service before the federal filing. In any event, service of this motion supplies indisputable notice and gives Gomez the full opportunity for correction Rule 11 requires.

### D. The SAC repeats the adjudicated premise.

The Second Amended Complaint does not merely allege independent conduct occurring after the state orders. It repeatedly attacks the orders themselves and the legal entitlement they established, including but not limited to:

1. Paragraph 167 characterizes the writ proceedings as the procurement of "unlawful writs of possession."
2. Paragraph 177 alleges that Gomez was lawfully present "on his property" when the corrected writ was executed, although the foreclosure judgment had extinguished his right of redemption and the property had been conveyed.
3. Paragraph 179 alleges that Vertex, Schaffel, Tessler, Shahbain, Alsamet, and Alnisafi procured a writ "to which they were not entitled." Read together with the surrounding paragraphs, that allegation reaches the corrected writ of March 4, 2026, which the Circuit Court had already held the deedholders were entitled to receive.
4. Paragraphs 163 through 197 convert the writ proceedings, the corrected writ, and possession awarded under it into supposed RICO predicates and evidence of a criminal enterprise.
5. The prayer for relief asks this Court to declare unlawful the Clerk's alleged practice of issuing writs to parties "not entitled to them." ECF No. 11 at 40.

Vertex does not contend that every claim involving later execution conduct is necessarily a collateral attack. An allegation that a third party independently mishandled chattels or made a false statement may present a different question. The Rule 11 violation addressed here is narrower: Gomez asks the federal court to impose liability on the express premise that the state court was wrong when it held that the deedholders were entitled to the corrected writ.

**E. Gomez adds unsupported accusations of bribery, fraud, extortion, and money laundering.**

The Second Amended Complaint uses criminal accusations to explain why the state courts, the Clerk, and the Sheriff's Office did not accept Gomez's position. It alleges that Vertex cultivated public officials who bent the rules in exchange for financial and political benefits. ECF No. 11 ¶¶ 48, 51. It alleges, upon information and belief, that Sheriff's Office employees received or were promised "cash from Vertex." *Id.* ¶¶ 68, 136, 155. It alleges that Glenda Holman and Kenyatta Washington received financial benefits from Vertex in exchange for dishonest official action. *Id.* ¶ 174.

The pleading identifies no payer, recipient, amount, date, account, transfer, witness, communication, or official act exchanged for a payment. Paragraph 68 says that records not yet obtained "could provide concrete evidence" and will be sought in discovery. Paragraph 166 says additional communications will be sought in discovery.

The pleading further alleges that Schaffel committed wire fraud by recording deeds for twenty-six properties and that Vertex, Schaffel, and Tessler caused or aided extortion through the writ proceedings. *Id.* ¶¶ 172, 179. It identifies no false Schaffel statement, property obtained through deceit, threat by Vertex, or property obtained through a threat. Gomez also alleges that Vertex distributed the proceeds of fraudulently obtained properties and used tax-sale transactions to launder money. *Id.* ¶¶ 182, 184. His basis is a reserve-not-met auction bid, a later contract price, recorded consideration, assessed value, an auction participant's attendance at a meeting, the purchasers' mailing address and limited liability companies, and the property's alleged vacancy. *Id.* ¶¶

184–91; ECF No. 11-9. None identifies criminal proceeds, a source offense, a concealed transfer, or any participant's knowledge that funds derived from crime.

## III. ARGUMENT

### A. The state warnings are direct evidence of notice, repetition, and the need for deterrence.

Rule 11(b)(1) prohibits presenting or later advocating a pleading for an improper purpose, including harassment or the needless increase of litigation cost; this is an objective inquiry. *Kunstler*, 914 F.2d at 519. A court may consider circumstantial facts surrounding the filing, including repeated filings and the nature of the claims. *Id.*

The two warnings are not background: they are judicially noticeable evidence that Gomez was told that his repeated filings were duplicative and could be viewed as vexatious. The second order then identified his conduct more precisely as repeated collateral attacks and warned that another baseless attempt could result in fees or filing restrictions. **Exhibits A–B**. The docket proves electronic service of that second order before Gomez filed the SAC. *See* **Exhibit B**.

The content of the SAC confirms the continuity. Gomez did not confine the federal case to an independent claim about what a deputy displayed or what happened to personal property. He again alleges that the Deedholders lacked entitlement to the corrected writ, calls the writs unlawful, treats the state proceedings as racketeering acts, and asks for a declaration directed at the same entitlement issue. ECF No. 11 ¶¶ 163–97 & at 40. The federal labels changed. The adjudicated premise did not.

That sequence is objective evidence of improper purpose under *Kunstler*: a warning against duplicative litigation, another round of filings, a ruling rejecting the renewed position, a specific warning against collateral challenges, and a federal pleading repeating the same position the next morning. The addition of unsupported allegations that Vertex bribed public employees, committed fraud and extortion, and laundered criminal proceeds does not create a new controversy. It increases the burden and reputational harm imposed by the same collateral campaign.

Vertex recognizes that a complaint filed sincerely to vindicate legal rights does not violate Rule 11(b)(1) merely because it also imposes cost. *Kunstler*, 914 F.2d at 519. The record crosses that line because Gomez has been given the proper forum, litigated the writ issue there, obtained multiple rulings, and received two warnings about repeating the effort. His proper recourse from an adverse state ruling is the Maryland appellate process. A new federal action accusing the prevailing parties and state actors of a criminal enterprise, while again asserting that the deedholders lacked entitlement to the writ, objectively serves to harass those parties and multiply the cost of a resolved dispute.

**B. The direct attack on the writ ruling violates Rule 11(b)(2).**

Rule 11(b)(2) requires a legal contention to be warranted by existing law or by a nonfrivolous argument to change it. Federal district courts lack jurisdiction over claims brought by state-court losers who complain of injuries caused by state judgments and ask the federal court to review and reject those judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (describing the prohibited claims as those "inviting district court review and rejection" of a state judgment). A federal claim crosses

the line when relief would require the district court to decide that a state judgment was wrongly entered or render it ineffective. *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 202 (4th Cir. 1997) (Rooker-Feldman implicated where the federal court "must take action that would render the judgment ineffectual").

Vertex does not seek sanctions merely because Gomez's claims are weak, and it does not contend that every allegation concerning later conduct falls within that doctrine. The Fourth Circuit reserves legal-contention sanctions for a position with "absolutely no chance of success under the existing precedent." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). This motion targets the direct contradiction in ¶ 179 and the theories that depend on it.

The Circuit Court held that the deedholders were entitled to the corrected writ. **Exhibits D**, **E**. Paragraph 179 alleges that they, Vertex, and others procured a writ "to which they were not entitled." To the extent that allegation refers to the corrected writ issued on March 4, 2026, it contradicts a ruling that this Court has no authority to revisit. Gomez identifies no intervening order vacating or staying the state ruling. He identifies no doctrine permitting this Court to sit as an appellate court over it. The RICO counts and requested declaration repeat that forbidden premise. ECF No. 11 ¶¶ 163–97 & at 40. Those contentions have no nonfrivolous basis under existing law.

### C. The criminal accusations violate Rule 11(b)(3).

Rule 11(b)(3) required Gomez to possess some information supporting his factual accusations before filing them. "To be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint." *Brubaker v. City*

*of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). A pleading violates the rule when accusations are "unsupported by any information obtained prior to filing." *Id.*

The challenged allegations accuse Vertex—both directly and through its principal and its counsel—of cultivating public officials through financial benefits, paying public employees, committing wire fraud and extortion, distributing criminal proceeds, and knowingly laundering money. ECF No. 11 ¶¶ 48, 51, 68, 136, 142–55, 172, 174, 179, 182, 184–91. Gomez offers relationships, lawful political contributions, meetings, a tax-lien group chat, court filings, deed recordings, an unrelated real-estate transaction, an unaccepted auction bid, transaction prices, assessed values, and business addresses. *Id.* Those circumstances do not provide information that a bribe, fraudulent communication, extortionate threat, transfer of stolen proceeds, or laundering transaction occurred.

The allegations against Schaffel and Tessler suffer the same defect as those against Vertex. The complaint identifies no payment or corrupt agreement involving either individual. It identifies no false representation by Schaffel in the recording of any deed and no property obtained by him through deceit. It identifies no threat by Tessler or Schaffel through which either obtained Gomez's property. Legal filings, professional communications, and representation in the writ proceedings do not supply evidence of the crimes alleged.

Gomez's own pleading confirms that he filed first and reserved the investigation for later. Paragraph 68 says future records could provide concrete evidence. Paragraph 166 says the communications needed to support the scheme will be sought in discovery. Rule 11 permits a contention specifically identified as likely to gain support after

reasonable discovery, but it does not permit a party to accuse identified people of bribery, fraud, extortion, and money laundering based on association and then use discovery to determine whether the accusation is true. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (the discovery qualification is not "a license to join parties, make claims, or present defenses without any factual basis").

Gomez cannot rely on discovery to supply the facts missing from his pleading. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," and a plaintiff whose complaint is deficient is "not entitled to discovery, cabined or otherwise." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686 (2009). The Fourth Circuit likewise rejects a complaint that merely leaves open the possibility that a plaintiff "might later establish some 'set of [undisclosed] facts' to support recovery." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin*., 780 F.3d 582, 587 (4th Cir. 2015). Where the facts needed to make a claim plausible have not been pleaded, the proper course is "dismissal—not discovery." *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 670 (4th Cir. 2024). Rule 8 requires a plausible factual basis for the claims, while Rule 11 required some prefiling information supporting the criminal allegations. Discovery may develop additional evidence for a claim already grounded in fact; it cannot be used to determine whether any factual basis exists for accusing named defendants of crimes.

The unsupported criminal accusations also matter to improper purpose. Gomez uses them to recast unfavorable state rulings as proof that the prevailing parties purchased

the outcome. The accusation supplies a rhetorical answer to the state court's repeated rejection of his position, but no evidence supplies a factual one.

### D. The safe-harbor requirements are satisfied.

Rule 11 requires a sanctions motion to be made separately, served under Rule 5, and withheld from filing for at least twenty-one days. Fed. R. Civ. P. 11(c)(2). Vertex served Gomez. *See* Affidavit of Service at **Exhibit F**.

### E. A focused sanction and filing condition are necessary to deter repetition.

Sanctions must be limited to what will deter repetition. Fed. R. Civ. P. 11(c)(4). Their primary purpose is deterrence. *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998) (identifying deterrence as Rule 11's "primary purpose"). A warning alone has already proved inadequate. The March warning was followed by additional state filings and the original federal complaint. The August warning was followed the next morning by the SAC.

The Court should first require correction. Gomez should be compelled to remove the allegations that the deedholders and Vertex lacked entitlement to the corrected writ and withdraw any count or requested declaration that requires this Court to reject the state entitlement ruling. He should also remove the unsupported accusations that Vertex bribed public employees, purchased official action, committed wire fraud or extortion, distributed criminal proceeds, or participated in money laundering. Because Counts XV and XVI rely on those contentions, Gomez should withdraw those counts against Vertex

unless he can identify the prefiling evidence supporting each alleged predicate and agreement.

The Court should also award Vertex the reasonable fees and expenses directly caused by the Rule 11 violations and reasonably incurred in presenting this motion. Vertex can submit contemporaneous records and supporting declarations after the Court rules on liability.

Finally, the record supports a narrow filing condition. A prefiling restriction requires notice, an opportunity to be heard, consideration of the litigant's history and purpose, the burden on other parties, and the adequacy of lesser sanctions. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818–19 (4th Cir. 2004). Any restriction must fit the particular abuse. *Id.* at 818.

Vertex does not request a categorical ban or a restriction affecting unrelated litigation. It requests an order requiring Gomez to obtain leave before filing another paper in this action that asks the Court to invalidate, disregard, or impose liability solely because of an order in the State Case. Any request for leave should certify that the proposed filing does not seek federal appellate review of a state order and should identify any independent conduct on which it relies. Gomez will have an opportunity to oppose the requested condition. The limitation leaves him free to make a potentially meritorious filing, but requires screening of the precise collateral practice for which the state court has twice warned him.

## IV. CONCLUSION

The Circuit Court warned Gomez against duplicative and vexatious filings. Gomez did not stop. The court rejected his renewed writ challenge. It then warned him specifically against another baseless collateral attack and electronically served that warning. Less than nineteen hours later, Gomez filed a federal pleading that again alleges the deedholders and Vertex lacked entitlement to the corrected writ and converts the adverse state proceedings into a criminal racketeering scheme.

The Court should find violations of Rule 11(b)(1), (b)(2), and (b)(3); order Gomez to withdraw or correct the challenged allegations, counts, and requested declaration; award Vertex the reasonable fees and expenses directly caused by the violations; impose the limited filing condition described above; and grant any other relief necessary to deter repetition.

Respectfully submitted[1],

/s/

Steven Tessler[2]
#31873
Tess Law LLC
2833 Smith Ave., #138
Baltimore, MD 21209
(872) 222-7377
steven@tesslaw.org

[1] Defendant notes that by default all citations are cleaned up and emphasis is added unless otherwise noted.

[2] The above-signed appears *solely* as counsel for Defendant Vertex TL, LLC, not in his individual capacity, and preserves all defenses to personal jurisdiction and service. *See*, *e.g.*, *Karcher v. May*, 484 U.S. 72, 78 (1987) (holding "the fact that [a person] participated in this litigation in [one] capacit[y] . . . does not mean that [he] became [a] part[y] in all of [his] personal and professional capacities").

**Certificate of Service**

I hereby certify that on September 9, 2026, I electronically filed the foregoing motion with the Clerk of the Court through the CM/ECF system, which will send notice of the filing to all registered counsel and parties.

/s/
Steven Tessler