**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| FAUSTO GOMEZ, | * | |
| | * | |
| Plaintiff, | * | Civ. No. MJM-26-1445 |
| | * | |
| v. | * | |
| | * | |
| YISROEL ARYEH SCHAFFEL, et al., | * | |
| | * | |
| Defendants. | * | |

* * * * * * * * * * *

**PLAINTIFF'S OPPOSITION TO DEFENDANT VERTEX TL LLC'S MOTION TO DISMISS (ECF No. 24)**

Plaintiff Fausto Gomez, proceeding pro se, opposes the Motion to Dismiss filed by Defendant Vertex TL LLC ("Vertex"), ECF No. 24, and the supporting memorandum, ECF No. 24-1.

## INTRODUCTION

Vertex's motion rests on one premise: that because Vertex conveyed title to 229 N. Monroe Street on December 3, 2025, nothing that happened afterward can be attributed to it. The Second Amended Complaint ("SAC"), ECF No. 11, alleges otherwise. On January 23, 2026, seven weeks after conveying title and while holding no deed, Vertex obtained a writ of possession in its own name (the "January writ") and used it to schedule the March 18 eviction. SAC ¶ 30. On March 4, the Circuit Court quashed the January writ because Vertex was not the deed holder. Id. ¶ 31. On March 6, a Sheriff's deputy delivered an eviction notice to the Property that cited the January writ. Id. ¶ 34. On March 18, the deputy who evicted Plaintiff presented the January writ as his authority. Id. ¶ 40. Vertex says that a second writ, issued on March 4 to its buyers—Defendants Mohamed Dahan Shahbain, Hadaf Anwar Alsamet, and Mohamed Abdo Alnisafi (the "Deedholders")—"supplied the operative authority" for the eviction (the "March 4 writ"). ECF No. 24-1 at 9. Neither writ could have supported a lawful eviction on March 18: the January writ had been quashed two

weeks earlier, and the March 4 writ, issued fourteen days before, could not satisfy the thirty-day notice required by Tax-Prop. § 14-836(b)(7) or the fourteen-day mailed notice required by City Code § 8B-2. SAC ¶¶ 31, 40. The only mailed notice was postmarked March 6, id. ¶¶ 35–36, and under Md. Rule 1-203(a) even a March 4 mailing would have made March 19 the earliest lawful date. After the eviction, Vertex's attorney conditioned the return of Plaintiff's belongings on Plaintiff dismissing the appeal in which Vertex is the sole appellee. Id. ¶¶ 6, 60, 100; Ex. 1 at i. On a motion to dismiss, those allegations control. Parts II.B and III, infra.

Vertex's motion attributes the eviction to the Deedholders. Vertex and the Deedholders are represented by the same attorney, Defendant Steven Tessler, who obtained both writs—the second within an hour after the first was quashed—and attended the eviction. SAC ¶¶ 13, 30, 32, 39. Whether they acted jointly or independently, their acts combined to cause a single injury, for which each is fully liable. *Consumer Prot. Div. v. Morgan*, 387 Md. 125, 178–80 (2005); *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979).

Vertex's jurisdictional arguments fail for a related reason. Plaintiff does not ask this Court to vacate the foreclosure judgment, restore title, or reverse any order of the Circuit Court. He seeks damages for the manner in which he was dispossessed—without the notice that Maryland and Baltimore City law required Vertex to give, with Vertex's quashed writ presented as the authority, after the Sheriff's Office told him the eviction was cancelled—and for the retention of his personal and business property. Those injuries were caused by the Defendants' conduct, not by any state-court judgment, and no state court has adjudicated them. Part II.B, infra.

## SUMMARY OF ARGUMENT

Rooker-Feldman does not apply because the SAC seeks damages for the Defendants' conduct in executing an eviction, not review of any state-court judgment (Part I). Preclusion does not apply because the claims do not require contradicting any state-court ruling (Part II). Vertex's conveyance of title does not absolve it, because the SAC alleges Vertex's own post-conveyance acts; neither writ Vertex invokes could lawfully have been executed on March 18; and Vertex is

liable for the eviction whether it acted through the parties' shared agent or as a concurrent tortfeasor; the SAC pleads those acts individually (Parts III–IV). The pre-eviction notice duties under Tax-Prop. § 14-836(b)(7) and City Code § 8B-2 ran to Vertex by the terms of those provisions (Part V). Maryland's policy of encouraging tax-sale purchasers is not a defense to executing invalid process without notice (Part VI). Each count states a claim against Vertex (Part VII), the Court should retain supplemental jurisdiction (Part VIII), and any dismissal should be without prejudice (Part IX).

## STANDARD OF REVIEW

Under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and draws all reasonable inferences in the plaintiff's favor, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 169 (4th Cir. 2016). A pro se complaint is "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). A party may plead claims "alternatively or hypothetically" and "regardless of consistency." Fed. R. Civ. P. 8(d)(2), (3).

Vertex's Rule 12(b)(1) argument is a facial attack: it does not dispute the truth of any jurisdictional allegation in the SAC, but argues that the SAC's own allegations, together with state-court orders the SAC itself describes, show the claims are barred. On a facial attack, the Court takes the complaint's allegations as true, as it does under Rule 12(b)(6). *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

Res judicata and collateral estoppel are affirmative defenses, Fed. R. Civ. P. 8(c)(1), as is Petition Clause immunity, and each may be resolved on a Rule 12(b)(6) motion only "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (cleaned up). The Court may take judicial notice that state-court filings and orders exist and what they say, but not of the truth of disputed facts asserted in them or in a party's description of them. *Zak v. Chelsea Therapeutics*

*Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015); *see Goines*, 822 F.3d at 168–69. Vertex relies throughout on a docket sheet, ECF No. 18-3, and on its own account of what Plaintiff "raised and lost" in state court. ECF No. 24-1 at 8, 10. A docket sheet shows that motions were filed and orders entered, not what they argued or decided.

## ARGUMENT

### I. Rooker-Feldman does not apply because Plaintiff complains of injuries caused by the Defendants' conduct, not by a state-court judgment.

The Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Vertex's principal authority, *T.M. v. University of Maryland Medical System Corp.*, 146 S. Ct. 1739 (2026), confirms the doctrine's limits. *T.M.* held that the doctrine reaches state judgments still subject to state appellate review. Id. at 1752. But it repeated that the doctrine occupies "narrow ground," and that it applies only when the plaintiff "is complaining of injuries caused by, and is seeking relief from, the state-court judgment itself." Id. at 1748. In the Fourth Circuit, where the plaintiff alleges injury from the adverse party's conduct, the doctrine does not apply even if a state court ruled on a related issue; any overlap is addressed through preclusion, not jurisdiction. *Hulsey v. Cisa*, 947 F.3d 246, 250–51 (4th Cir. 2020); *Thana v. Bd. of License Comm'rs for Charles Cnty.*, 827 F.3d 314, 319–20 (4th Cir. 2016); *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718–19 (4th Cir. 2006).

Vertex says the SAC attacks the foreclosure judgment, the deed and transfer, the issuance of the March 4 writ, and the order allowing the eviction to stand. ECF No. 24-1 at 6. The SAC seeks no relief from any of those rulings. It acknowledges the March 6, 2025 judgment, SAC ¶ 23, and does not ask this Court to vacate it, to declare that Plaintiff holds title, or to set aside any deed

or writ. Its one comment on a state ruling—¶ 49's criticism of the order declining to quash the March 4 writ—is pleaded as background to the allegations of favorable treatment, and no count depends on that order being wrong. Part II.B, infra. The relief sought is compensatory and punitive damages, treble damages under RICO, and a declaration concerning the Clerk's practice of issuing writs to parties not entitled to them. Id. at 40 (Prayer for Relief). No damages over the eviction were sought in the state proceedings. SAC ¶¶ 23, 31, 49, 60; Exs. 1–2. The injury for which damages are sought in this action is the March 18 eviction itself: an eviction carried out before the required notice periods had run, which cost Plaintiff his possession of the premises, his deli and grocery business, and the inventory, equipment, cash, and records inside. SAC ¶¶ 5, 40, 43. Where the SAC refers to the loss of Plaintiff's "real property," id. ¶¶ 73, 130, 156, it means that premature, surprise loss of possession. Title had passed to the Deedholders on December 3, 2025, id. ¶ 29; it is the subject of Plaintiff's pending state appeal, id. ¶ 60, not of this action.

The injuries alleged were not caused by any state-court judgment. No order directed anyone to take possession without the notice required by Tax-Prop. § 14-836(b)(7) and Baltimore City Code Art. 13, § 8B-2, to execute a writ that had been quashed, to tell Plaintiff the eviction was cancelled and then carry it out by surprise in coordination with Vertex, or to hold his property until he waived his legal claims. Those acts are alleged against the Defendants, SAC ¶¶ 30–44, 100, and they are the source of the injuries for which Plaintiff seeks damages. A judgment for Plaintiff on those claims would leave every state-court order exactly as it stands. That is the point of *Hulsey*. There the plaintiff alleged that the defendants had used sham state-court litigation, and a discovery ruling obtained in it, to defraud him; the Fourth Circuit held the claims were not barred, because the injuries "were caused by the defendants' fraud, which was merely enabled by the state court's discovery ruling." 947 F.3d at 251–52.

The declaratory relief requested does not change the analysis. The SAC asks for a declaration that the Clerk's practice of issuing writs of possession to parties not entitled to them is unconstitutional. SAC at 40; id. ¶¶ 46, 78–82. That is a challenge to a practice, not to any particular order, and Rooker-Feldman does not bar a claim that a rule or practice governing a state-court

decision is unconstitutional. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011); *T.M.*, 146 S. Ct. at 1747 n.4.

*Ortiz v. Prince George's County*, No. 8:21-cv-1169-AAQ, 2025 WL 315963 (D. Md. Jan. 27, 2025), does not hold otherwise. The plaintiff in *Ortiz* sued the County and its tax collector for damages arising directly out of the tax sale of his property, alleging that the County's misrecording of his address deprived him of notice of the sale and the foreclosure action. Id. at *1, *5. His injury—loss of title—was "one and the same" as the foreclosure judgment, and the court distinguished "independent third-party action, such as the manner in which the purchaser pursued the property." Id. at *5. Plaintiff's claims here concern events a year after the foreclosure judgment and seek damages for the manner of the eviction, a matter no other court has been asked to decide.

The state-court record confirms the point. Plaintiff attaches the cover, Statement of the Case, and Issues or Questions Presented from his opening brief in each of the two appeals now pending in the Appellate Court of Maryland, and asks the Court to take judicial notice of what each appeal presents. Ex. 1 (No. ACM-REG-1791-2025); Ex. 2 (No. ACM-REG-0512-2026); Fed. R. Evid. 201(b)(2); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989). The first appeal, in which Vertex is the sole appellee, asks whether the Circuit Court abused its discretion in declining to vacate the foreclosure judgment for Vertex's defective service of the statutory pre-complaint notices. Ex. 1 at 1–3. It was noted on October 17, 2025 and briefed on February 9, 2026, before the March 4 writ issued and before the March 18 eviction, and so could not have presented any question about either. Ex. 1 at i, 2. The second asks whether Tax-Prop. § 14-850 entitles private transferees of a tax-sale purchaser to a writ of possession without a judgment awarding possession, and whether the Clerk may issue a writ to non-parties. Ex. 2 at 1–2. Neither appeal presents any question about the notices required before execution of a writ of possession and eviction, the manner in which the March 18 execution was carried out, the retention of Plaintiff's property, or damages.

## II. Maryland preclusion law does not bar the claims.

### A. Claim preclusion.

Maryland claim preclusion requires identity of parties, identity of claims, and a final judgment on the merits. *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 107 (2005). Whether claims are identical turns on whether they arise from the same transaction or series of transactions. Id. at 108–09. A judgment cannot preclude claims based on events that had not occurred when it was entered. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955); Restatement (Second) of Judgments § 24 cmt. f (1982).

The first element, identity of parties, fails for most Defendants. Seven of the eleven named Defendants—McQueen, Holman, Conaway, Washington, Schleifer, Schaffel, and Tessler—were never parties to the tax-sale case. The Deedholders were not parties to the foreclosure action either; they obtained the March 4 writ as non-parties, which is the question in the second appeal, where they are appellees. Ex. 2 at i, 2.

The second element, identity of claims, fails as to Vertex. The foreclosure judgment was entered March 6, 2025. SAC ¶ 23. Every act on which Plaintiff's claims rest came ten months or more later: the no-deed writ, the missing notices, the assurance that the eviction was cancelled, execution on the quashed writ, and the retention of Plaintiff's property. Id. ¶¶ 30–44, 100. None of that could have been raised before the judgment foreclosing the right of redemption, and the tax-sale provisions Vertex cites do not suggest otherwise. Tax-Prop. § 14-842 and Md. Rule 14-505 require a defendant to plead "the invalidity of the taxes or the invalidity of the proceedings to sell or the invalidity of the sale" as an affirmative defense. Plaintiff's claims assert none of those things; they concern the execution of a writ a year after judgment.

Nor were the claims raised, or required to be raised, in Plaintiff's post-judgment motions. A motion to quash a writ of possession asks the court to withdraw process; it is not a vehicle for damages against the writ applicant, the Sheriff's deputies, the Clerk, or a City Councilmember. Vertex's contention that Plaintiff "raised and lost his notice challenges in the state court," ECF No.

24-1 at 10, confuses two different notices. The notice challenge Plaintiff litigated in the Circuit Court, which is the subject of the first appeal, concerned Vertex's compliance with the pre-complaint notice requirements of Tax-Prop. § 14-833(a-1). Ex. 1 at 1–3. The notices at issue here are the ones required before executing a writ of possession under Tax-Prop. § 14-836(b)(7) and City Code § 8B-2. SAC ¶¶ 25–28, 35. The state courts have not been asked to decide, and have not decided, whether those notices were given. Ex. 2 at 1–2. *Ortiz* barred a declaratory claim the plaintiff "could have" raised in the foreclosure action on the same facts, 2025 WL 315963, at *8; these claims arise from a different transaction, against different parties, on post-judgment facts.

**B. Issue preclusion.**

Issue preclusion bars relitigation only of an issue actually litigated and determined by a valid and final judgment, where the determination was essential to the judgment. *Garrity v. Md. State Bd. of Plumbing*, 447 Md. 359, 368–69 (2016). Vertex identifies two rulings: the foreclosure judgment, and the orders declining to quash the March 4 writ. ECF No. 24-1 at 8. Neither ruling is at issue here. The SAC does not allege that the foreclosure judgment is invalid. And the claims do not depend on the validity of the March 4 writ, because they do not depend on which writ authorized the eviction. If it was the January writ, that writ had been quashed. If it was the March 4 writ, then even accepting that the Deedholders were entitled to it, executing it fourteen days later without the required notice, with a different and quashed writ presented at the door, after telling the occupant the eviction was cancelled, violated the statutes and the Constitution. SAC ¶¶ 34–36, 40. No state court decided that claim, and Plaintiff need not relitigate either ruling to prove it.

Nor can Vertex show what was actually litigated with a docket sheet. *Goodman*, 494 F.3d at 464; *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (judicial notice of a prior proceeding is proper on a preclusion motion "when the res judicata defense raises no disputed issue of fact"); Standard of Review, supra.

**III. Vertex's conveyance of title does not absolve it of its own post-conveyance conduct.**

Vertex's central argument is that the SAC's "timeline absolves Vertex" because Vertex conveyed title on December 3, 2025 and the Deedholders held the "operative writ" on March 18. ECF No. 24-1 at 9. The argument omits the allegations that concern Vertex.

First, Vertex acted after the conveyance. On January 23, 2026, "[d]espite holding no deed, Vertex obtained a writ of possession from the Baltimore City Court Clerk's office . . . and used it to schedule an eviction for March 18, 2026." SAC ¶ 30. Vertex does not dispute this. ECF No. 24-1 at 21. A writ of possession in a tax-sale case is available only to a person who "acquires a deed to property under this subtitle." Tax-Prop. § 14-850. Vertex had conveyed its deed seven weeks earlier. SAC ¶ 29. Vertex's memorandum does not argue that the January writ was validly issued.

Second, the March 4 writ does not break the connection between Vertex's writ and the eviction. The March 18 date was set under the January writ, the March 6 notice cited it, and the deputy presented it at the door; the SAC alleges that "[i]f not for the improperly issued writ, Plaintiff would not have been evicted on March 18." SAC ¶¶ 30, 34, 40, 82. Vertex responds that the March 4 writ "supplied the operative authority for possession." ECF No. 24-1 at 9. It could not have. A writ issued at 4:17 p.m. on March 4 could not be lawfully executed on March 18: the thirty-day period under § 14-836(b)(7) ran to April 3, and even a § 8B-2 notice mailed that same day would have made March 19 the earliest lawful date under Md. Rule 1-203(a). The only mailing sent was postmarked March 6. Id. ¶¶ 32, 35, 40; Part V, infra. Tessler applied for the March 4 writ within an hour of the quashal to keep the date Vertex had set, not to restart the process. Id. ¶¶ 32, 40, 57. Vertex's own formulation—"[w]hichever paper McQueen displayed," ECF No. 24-1 at 9—concedes that the March 18 eviction was going forward on Vertex's schedule regardless of which writ was invoked.

Third, the SAC alleges facts connecting Vertex to the March 18 execution beyond the writ. Tessler is Vertex's attorney and, on information and belief, takes direction from Vertex's principal, Schaffel, and is paid a percentage of Vertex's profits. SAC ¶¶ 12–13. He filed the January

application for Vertex and, within an hour of the quashal, the March 4 application for the Deedholders. Id. ¶¶ 13, 30, 32. The March 4 application relied on the deed Vertex had obtained. Ex. 3; Fed. R. Evid. 201(b)(2). He was present at the eviction. Id. ¶ 39. Afterward, he conditioned the return of Plaintiff's property on Plaintiff dismissing his appeal to recover title—an appeal in which Vertex is the sole appellee. Id. ¶¶ 6, 60, 100; Ex. 1 at i. The SAC alleges that Vertex, Schaffel, and Tessler acted for their own benefit and for the Deedholders', id. ¶ 51, and that the Deedholders acted through Tessler as their agent, id. ¶ 72. Vertex answers that Tessler acted for the Deedholders. ECF No. 24-1 at 10. An attorney can act for two clients at once: Vertex and the Deedholders share counsel and have filed jointly here, ECF No. 55, and a demand that Plaintiff drop an appeal against Vertex serves Vertex. A principal is liable for acts its agent takes within the scope of the agency or, for an agent who is not a servant, acts done "in the manner authorized or directed by the principal." *Globe Indem. Co. v. Victill Corp.*, 208 Md. 573, 580–82 (1956). The SAC pleads that Schaffel directs Tessler and that Tessler's conduct served Vertex. SAC ¶¶ 12, 51, 60. That the Circuit Court declined to quash the March 4 writ, ECF No. 24-1 at 9, does not bear on any of this. Part II, supra.

Fourth, even if Vertex's and the Deedholders' acts are viewed as independent, Vertex is liable for the whole injury. "[W]hen tortfeasors act independently and their acts combine to cause a single harm, the tortfeasors are jointly and severally liable," and the burden of apportioning an indivisible injury shifts to the defendants. *Morgan*, 387 Md. at 178–80; *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 439 Md. 333, 352–53 (2014). The same rule governs the federal claims: the common law "allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident," *Edmonds*, 443 U.S. at 260, and common-law tort rules "provide the appropriate starting point" for damages under § 1983, *Carey v. Piphus*, 435 U.S. 247, 257–58 (1978). The March 18 eviction was one injury. What share of it each of Vertex and the Deedholders bears is a matter of contribution between them, not a ground for dismissing either.

**IV. The SAC pleads Vertex's conduct individually.**

Vertex objects that the SAC's use of the term "private Defendants" is impermissible group pleading. ECF No. 24-1 at 12–13. *Rice v. Adams*, 172 F.4th 428 (4th Cir. 2026), condemns complaints that make only collective allegations and never say what each defendant did. The SAC says what Vertex did to Plaintiff. Vertex applied for and obtained a writ of possession on January 23, 2026, while holding no deed, and used it to schedule the March 18 eviction. SAC ¶ 30. Vertex did not give the pre-possession notices that § 14-836(b)(7) and § 8B-2 required of it. Id. ¶¶ 3, 25–28, 35–36. The notice the deputy delivered on March 6 cited Vertex's writ, id. ¶ 34; the deputy presented Vertex's quashed writ at the eviction, id. ¶ 40; and but for Vertex's writ, no eviction would have been scheduled for March 18, id. ¶ 82. Vertex's attorney obtained the March 4 writ within an hour of the quashal, arranged the eviction with the Sheriff's Office while that office was telling Plaintiff the eviction was cancelled, attended it, and afterward conditioned the return of Plaintiff's property on his dismissing the appeal against Vertex. Id. ¶¶ 6, 32, 39, 50, 57, 100, 151 & Ex. 7; Parts III, VII.A. The collective term "private Defendants" is defined in ¶ 2 as six named persons, and the counts incorporate the paragraphs describing each one's role. A count that uses a defined term for a group whose members' conduct is pleaded individually is not group pleading.

**V. The pre-eviction notice duties ran to Vertex, and the absence of a supersedeas bond is irrelevant.**

Vertex argues that "every notice duty [the SAC] invokes belonged to someone else." ECF No. 24-1 at 10. Both provisions name the party that owes the duty, and in each case it is Vertex.

Baltimore City Code Art. 13, § 8B-2(a) places the duty on the "foreclosure purchaser": whenever a judgment for possession is entered in a foreclosure purchaser's favor and a writ has issued, "the foreclosure purchaser shall notify any occupant of the property of the date on which the writ of possession is first scheduled to be executed by the Sheriff." Section 8B-1 defines "foreclosure purchaser" as the person who purchased the property at the tax sale. That is Vertex. The Deedholders took by private conveyance from Vertex, not at a tax sale. SAC ¶ 29. The

judgment was entered in Vertex's favor, the writ under which the eviction was "first scheduled" was issued to Vertex, and Vertex did the scheduling. Id. ¶¶ 23, 30.

The ordinance makes that notice a condition of execution. § 8B-3(a), (b). The SAC alleges the notice was not properly given. SAC ¶¶ 3, 28, 58. The only mailing leading up to the eviction was Tessler's letter, postmarked twelve days before the eviction and silent as to the date, id. ¶¶ 35–36, which fails both the fourteen-day requirement, § 8B-2(b)(1), and the requirement that the notice state the scheduled date, § 8B-2(c)(2). Whichever client Tessler sent that letter for, id. ¶ 13, it did not satisfy § 8B-2, and Vertex sent nothing else. Id. ¶ 36; Part III, supra.

Tax-Prop. § 14-836(b)(7)(i) likewise names the party that owes the duty: "at least 30 days before taking possession of the property, the plaintiff shall give any tenant of the property written notice." Vertex was the plaintiff in the foreclosure action throughout, including when it obtained the January writ and scheduled the March 18 eviction. SAC ¶¶ 23, 30.

Vertex also argues that Plaintiff was not a "tenant." ECF No. 24-1 at 10–11. The SAC alleges that Plaintiff maintained a residential apartment on the upper floor and living space in the basement, and was the Property's lawful occupant. SAC ¶¶ 1, 10. The statute's own mailing rule directs notice to "occupant" when the tenant's name is unknown and to "each separately leased area . . . that the plaintiff can reasonably ascertain is occupied," § 14-836(b)(7)(iii). To the extent the answer depends on the nature of Plaintiff's occupancy, that is a question of fact not resolvable against Plaintiff on the pleadings. And § 8B-2 protects "any occupant" of residential property, which the SAC alleges Plaintiff was. SAC ¶¶ 1, 10.

Vertex's point about the supersedeas bond, ECF No. 24-1 at 11, answers an argument the SAC does not make. Plaintiff does not contend that the judgment was stayed; the absence of a stay permitted lawful enforcement, not enforcement without the statutory notices, on a quashed writ, or by surprise. Nothing in Md. Rule 8-422 suspends § 14-836(b)(7) or § 8B-2 when no bond is posted.

**VI. Maryland's policy of encouraging tax-sale purchasers is not a defense to the claims alleged.**

The policy Vertex invokes protects what the tax-sale statutes authorize. The SAC does not challenge Vertex's purchase of tax certificates, its foreclosure, or its conveyance of the deed. It challenges what Vertex did afterward: obtaining writs of possession it was not entitled to, scheduling evictions on them, and carrying out the March 18 eviction without the notices the same statutes require before possession is taken. SAC ¶¶ 30–31 & n.1, 35–36, 46, 79. None of Vertex's cases holds otherwise. *Nelson v. City of New York*, 352 U.S. 103, 111 (1956), denies relief from the hardship of a valid tax-sale statute "unless some constitutional guarantee is infringed"; the SAC alleges that constitutional guarantees, and the statutes themselves, were violated. *Heartwood 88, Inc. v. Montgomery County*, 156 Md. App. 333 (2004), and *Royal Plaza Community Ass'n v. Bonds*, 389 Md. 187 (2005), concern foreclosure and redemption, not possession or liability for executing invalid process. *Pung v. Isabella County*, 146 S. Ct. 1964 (2026), concerns Takings Clause compensation after a tax sale.

**VII. Each count states a claim against Vertex.**

**A. Count I (Fourth Amendment, 42 U.S.C. § 1983).**

An eviction carried out by a sheriff's deputy on behalf of a private party is a seizure of the occupant's property. *Soldal v. Cook County*, 506 U.S. 56, 61, 72 (1992). Vertex does not dispute a seizure; it argues only that it did not act under color of state law and did not itself perform the seizure. ECF No. 24-1 at 11–13.

The SAC pleads state action on two independent grounds. First, it pleads joint action in fact. Acting under color of state law "does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). Holman was Vertex's point of contact for scheduling evictions and arranged them through private emails with Tessler. SAC ¶¶ 15, 50, 61 & Ex. 7. While the Sheriff's Office was telling Plaintiff the eviction was cancelled, it went forward on the scheduled date; McQueen said Washington knew; McQueen and Tessler arrived and executed it together;

and Washington declined to stop it. Id. ¶¶ 31–39, 41–42, 57, 151. That is joint engagement in the challenged action, not "mere approval of or acquiescence." ECF No. 24-1 at 12.

Second, Vertex invoked a state procedure that the SAC challenges as unconstitutional. "[A] private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment," and where the claim is that the State's procedure itself is defective, joint participation requires nothing "more than invoking the aid of state officials to take advantage of state-created" procedures. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982); *see Gregg v. Ham*, 678 F.3d 333, 339 n.3 (4th Cir. 2012) (private party is a state actor where it "has acted together with or has obtained significant aid from state officials" (quoting *Lugar*, 457 U.S. at 937), and citing *Jackson v. Pantazes*, 810 F.2d 426, 429–30 (4th Cir. 1987), which held a bail bondsman executing a search with a police officer's assistance to be a state actor). The SAC challenges the Clerk's practice of issuing writs of possession on application, without judicial review or any check that the applicant holds a deed. SAC ¶¶ 78–82; id. at 40. Vertex obtained a writ under that procedure and used it to schedule the March 18 eviction with the Sheriff's Office, which executed it on that date. Id. ¶¶ 15, 30, 39. Vertex's point that the SAC identifies no "payment, amount, date, sender, recipient," ECF No. 24-1 at 12, goes to the bribery allegations, which Count I does not require.

In *Sallie v. Tax Sale Investors, Inc.*, 998 F. Supp. 612 (D. Md. 1998), the case Vertex relies on, this Court applied *Lugar* to a tax-sale purchaser that evicted an occupant with a deputy sheriff. The purchaser argued, as Vertex does, that it "simply followed the procedures mandated by the state tax sale statute" in requesting that the Sheriff execute the writ. Id. at 622. The court rejected that argument, held that *Lugar* controls when "a private party acts in concert and jointly with an admitted governmental actor," id. at 622–23, and denied the purchaser's motion because its role in the eviction was a question of fact for discovery, id. at 614–15, 623–25. The "relinquished entirely" language Vertex quotes, ECF No. 24-1 at 12, was an observation about that record, id. at 623–24, not the holding. *Accord Kennedy v. Widdowson*, 804 F. Supp. 737, 740 (D. Md. 1992) (private vendor who joined a sheriff and deputy in removing plaintiffs' property).

Vertex's objection that it did not itself perform the seizure, ECF No. 24-1 at 12–13, misreads *Lugar*: the party that invokes the process is a state actor for the seizure the officers carry out; its own hands need not be on the property. 457 U.S. at 941–42. Vertex procured the writ the deputy presented at the door. SAC ¶¶ 30, 34, 40, 82; Part III, supra. Independently, Vertex was present through Tessler, its agent, id. ¶¶ 12–13, 39, 57, 70; whether Tessler also acted for the Deedholders is answered in Part III. Vertex's group-pleading objection is addressed in Part IV.

The seizure was unreasonable: it was carried out without the notice state and local law required, with a quashed writ presented as its authority, after the occupant had been told it would not occur. SAC ¶ 58; Parts III and V, supra.

**B. Count II (Maryland Declaration of Rights, Articles 19 and 26).**

Count II pleads an Article 26 seizure claim, with damages under Article 19. SAC ¶¶ 75–76. Vertex's Article 19 point, ECF No. 24-1 at 13, thus depends on whether Article 26 reaches Vertex.

Article 26 is construed in pari materia with the Fourth Amendment, *Gadson v. State*, 341 Md. 1, 8 n.3 (1995), so the joint-participation analysis in Part VII.A applies. *Manikhi v. Mass Transit Administration*, 360 Md. 333, 363–64 (2000), dismissed a constitutional tort claim against union officials because they were private individuals who were not "public officials" or "government agents"; it did not involve a private party that invoked state process and acted with a sheriff to execute it, which is what makes such a party a government agent under *Lugar*. Vertex cites no case holding that Article 26 does not reach such a party.

**C. Count III (Fourteenth Amendment due process, 42 U.S.C. § 1983).**

Plaintiff was in possession of the Property, where he had a residence and ran his business, when the Sheriff's Office removed him on March 18 and his property passed into the Defendants' control. SAC ¶¶ 1, 5, 10, 40, 99. Vertex does not dispute that this was a deprivation of a protected interest. The process due before an eviction is notice: notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306,

314 (1950). Maryland and Baltimore City have fixed what that notice is—thirty days' written notice from the foreclosure plaintiff and fourteen days' mailed notice from the purchaser stating the eviction date—and neither was given. Part V, supra; SAC ¶¶ 34–36. Instead, the Sheriff's Office told him the eviction was cancelled and removed it from its public schedule, then executed it on the date Vertex had set, with a quashed writ presented as its authority. Id. ¶¶ 31–40, 84–85. Vertex set that date by obtaining a writ it was not entitled to, and its agent arranged the execution with the Sheriff's Office and attended it. Id. ¶¶ 30, 39, 50, 57.

On state action, Part VII.A controls. Vertex answers that the SAC alleges only "private misuse of a state statute." ECF No. 24-1 at 14. *Lugar* does distinguish a private party's misuse of a sound procedure, which "could not be ascribed to any governmental decision," from a deprivation produced by "the procedural scheme created by the statute" when invoked with the aid of state officials. 457 U.S. at 940–41. The SAC alleges the second. It challenges the procedure as the State administers it: the Clerk issues writs of possession on application, without judicial review or any check that the applicant holds a deed, and the Sheriff's Office executed them without confirming that the required notices were given. SAC ¶¶ 78–82, 85–86; id. at 40 (Prayer for Relief). Vertex invoked that procedure, and the Clerk and the Sheriff's Office carried it out against Plaintiff. Id. ¶¶ 30, 39.

Independently, the joint-action ground in Part VII.A does not depend on that distinction. *Lugar*'s misuse count failed because invoking the statute without grounds "could in no way be attributed to a state rule or a state decision." 457 U.S. at 940. Where officials are participants in the challenged act, a private party who is "a willful participant in joint action with the State or its agents" acts under color of law, even where its own use of the process was wrongful. *Dennis*, 449 U.S. at 27–28. The SAC alleges participation, not routine execution: officials who knew the January writ had been quashed, told Plaintiff the eviction was cancelled, arranged it with Vertex's agent for the original date anyway, and executed it with him—despite the Sheriff's duty not to execute a writ when he "reasonably believes" the notice requirements have not been met. Part VII.A, supra; SAC ¶¶ 31–34, 37, 39–42, 50, 57, 151; City Code § 8B-3.

On process, Vertex's arguments fail on the same facts. The "repeated opportunities to litigate" it cites, ECF No. 24-1 at 14, did not concern the eviction date or the missing notices: the motion to vacate and first appeal concerned the foreclosure judgment, Ex. 1 at 1–3; Plaintiff's challenge to the January writ succeeded, and the eviction proceeded on the date that was scheduled by using that writ, SAC ¶¶ 31, 40; and the motion to quash the March 4 writ was denied the day after the eviction, id. ¶ 49. A hearing after the fact on a different question is not an opportunity to object before the deprivation.

Nor does a post-deprivation remedy cure the omission. Vertex's *Hudson v. Palmer* argument applies only to "random and unauthorized" acts by state employees, where pre-deprivation process is impracticable. It does not apply where the deprivation results from an established state procedure, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982), or where it was predictable, pre-deprivation process was feasible, and the officials acted within their authority, *Zinermon v. Burch*, 494 U.S. 113, 136–39 (1990). The deprivation here was predictable, and the statutory notices were not merely feasible but required.

That the January writ issued and was later quashed does not show the application was proper when made: Vertex had conveyed its deed seven weeks earlier and had lost a no-deed writ for the same Property before. SAC ¶¶ 29–30, 31 n.1. *Maryland v. Garrison*, 480 U.S. 79 (1987), concerned officers who reasonably believed their warrant was valid. And if declaratory relief against the Clerk's practice is not redressable by an order against Vertex, ECF No. 24-1 at 15, the remedy is to deny that relief as to Vertex, not to dismiss a count that also seeks damages.

**D. Count IV (Articles 19 and 24).**

Vertex says Count IV is "Count III with state citations." ECF No. 24-1 at 15. That is correct. Article 24 and the Fourteenth Amendment "have the same meaning," *Pitsenberger v. Pitsenberger*, 287 Md. 20, 27 (1980), so Count IV stands with Count III. Vertex is a "government agent" for the same reason it is a state actor under *Lugar* and *Dennis*, Parts VII.A–B, supra, and the due-process claim is stated for the reasons in Part VII.C. Article 19 is pleaded as the remedy for the Article 24 violation, not as an independent violation. SAC ¶ 89.

**E. Count V (tortious interference with economic relations).**

The elements are intentional and willful acts, calculated to cause damage to the plaintiff in his lawful business, done without right or justifiable cause, that cause actual damage. *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 628–29 (2003). For prospective relations, the conduct must be improper or wrongful; what qualifies includes "violation of criminal law," and "is a factual question to be determined on the basis of all the facts and circumstances." *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 300–01 (1994).

Plaintiff's deli and grocery at the Property had regular customers and established vendors; those are the relationships Count V protects. SAC ¶¶ 5, 91, 95. The "specificity" language Vertex quotes, ECF No. 24-1 at 16, does not appear in *Macklin*. Vertex knew the Property housed an operating business. Id. ¶ 92. Vertex obtained a writ it was not entitled to, scheduled the eviction on it, and did not give the notices required before execution. Id. ¶¶ 30, 35–36; Parts III–V, supra. Because the eviction came without warning, Plaintiff could not relocate, retrieve inventory, or return vendors' equipment, and the relationships ended. Id. ¶¶ 5, 93–95. The closure is what terminated them; no separate act directed at a customer or vendor is required. The SAC alleges this was done to weaken his ability to fund his appeal against Vertex, id. ¶¶ 93, 132, and that the writ and eviction were extortion under Md. Code, Crim. Law §§ 3-701 and 3-702, id. ¶¶ 176–79. The no-deed writ, the missing notices, and the extortion are each wrongful under *Macklin*, and Vertex procured the writ and helped carry out the eviction. Id. ¶¶ 30, 179.

The SAC does not challenge enforcement of a lawful judgment or conveyance of a deed, ECF No. 24-1 at 16; it challenges a writ obtained without a deed and an eviction executed without notice. The move to 200 N. Monroe Street, SAC ¶ 94, is what notice would have allowed, not the relationship interfered with. Schaffel's visit, id. ¶ 92, is pleaded to show knowledge.

**F. Counts VI and VII (conversion and trespass to chattels).**

Conversion is "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560 (1999). The eviction came without warning; everything Plaintiff owned

was inside the building, and the Defendants took control of it. SAC ¶¶ 5, 99. When Plaintiff asked for it back, Tessler refused unless Plaintiff dismissed his appeal to recover title and waived all claims relating to the Property. Id. ¶¶ 6, 100. The property has not been returned. Id. ¶ 101. Retaining another's property and conditioning its return on a waiver of claims is dominion in denial of the owner's right.

Vertex answers that the demand is "attributed to Tessler alone." ECF No. 24-1 at 17. Tessler is Vertex's agent, SAC ¶¶ 12–13, and the demand served Vertex, the only appellee in the appeal Plaintiff was told to drop, Ex. 1 at i. Whether Tessler acted for Vertex, the Deedholders, or both is a question of fact, and if both, each is liable for the whole of an indivisible injury. *Morgan*, 387 Md. at 178–80; Part III, supra.

City Code § 8B-4 does not help Vertex. Section 8B-4 deems property left at execution "abandoned" and shields the foreclosure purchaser from liability for it. § 8B-4(a), (b). That abandonment follows from a § 8B-2 notice warning the occupant that property left behind "will be considered abandoned," § 8B-2(c)(4), and from execution of a writ the ordinance permits to be executed, § 8B-3. The SAC alleges neither: the notice was not properly given, and the writ presented at the eviction had been quashed. SAC ¶¶ 3, 35–36, 40, 58. *See Nickens v. Mount Vernon Realty Grp., LLC*, 429 Md. 53, 62 (2012) (reversing judgment on conversion claim of occupant locked out by foreclosure purchaser's agents; whether personalty left in the premises was abandoned could not be decided without discovery).

Trespass to chattels is intentional interference with another's possession of personal property. The eviction dispossessed Plaintiff of his merchandise, cash, refrigeration units, and records; perishable goods spoiled and other property was lost or stolen. SAC ¶¶ 5, 104. Vertex caused that interference by procuring the writ and scheduling the execution, id. ¶ 30, and through its agent's retention of the property, id. ¶¶ 100–01.

**G. Count VIII (unjust enrichment).**

The benefit alleged is possession of the Property and its contents. SAC ¶¶ 107–09. Vertex scheduled the March 18 eviction on the January writ, id. ¶ 30, and its agent retained the contents

on condition that Plaintiff dismiss the appeal in which Vertex is the sole appellee and waive his claims, id. ¶¶ 6, 100; Ex. 1 at i. Vertex's December conveyance, ECF No. 24-1 at 18, does not answer that allegation: the SAC claims what was taken on March 18, not the sale proceeds or Vertex's tax-sale rights. Parts I–II, supra.

Count VIII names its recipients in the alternative—Vertex, Schaffel, and Tessler, or Tessler and the Deedholders—as Rule 8(d)(2) permits. SAC ¶ 107. That the alternatives are "mutually exclusive," ECF No. 24-1 at 18, is what makes them alternatives. Which party holds the benefit is for discovery.

**H. Count IX (trespass to land).**

Trespass is an intentional or negligent intrusion upon the possessory interest in property of another. *Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497, 508 (2005). One who intentionally causes a third person to enter land in the possession of another is liable for the entry. Restatement (Second) of Torts § 158(a) (1965). Plaintiff was in possession, SAC ¶¶ 1, 10, and Tessler and McQueen entered under the quashed January writ, id. ¶¶ 40, 112, without the pre-possession notices required for lawful entry, id. ¶ 113. Vertex caused that entry by obtaining the January writ and scheduling the eviction on it, id. ¶¶ 30, 39, 82; Part IV, supra.

The Deedholders' title does not defeat the claim: trespass protects possession, and neither writ could support a lawful entry on March 18. Parts II.B and III, supra. The claim rejects no state-court ruling. Parts I–II, supra. The notice duties ran to Vertex, not "another actor." Part V, supra. Vertex's "open door" argument, ECF No. 24-1 at 19, fails: a store's invitation to the public during business hours, *Woodward v. Newstein*, 37 Md. App. 285, 293 (1977), is not consent to enter and dispossess the proprietor, and consent is a defense only within its scope. *Mitchell*, 164 Md. App. at 508–09.

**I. Count X (fraud).**

Vertex conveyed the Property on December 3, 2025, and thereafter held no possessory right in it. SAC ¶ 29. Seven weeks later, Vertex obtained a writ of possession and used it to schedule an eviction for March 18. Id. ¶ 30. The deputy's March 6 eviction notice cited it, id. ¶ 34,

and on March 18 the deputy presented it to Plaintiff as the legal basis for taking possession, id. ¶ 40. Plaintiff surrendered because he believed the writ was valid process. Id. ¶¶ 177–78.

That is a false representation of lawful authority on which Plaintiff reasonably relied to his injury. *Hoffman v. Stamper*, 385 Md. 1, 28 (2005). Knowledge and intent that Plaintiff rely are alleged, SAC ¶ 121, and knowledge follows from ¶ 29: Vertex knew it had conveyed the deed. The SAC pleads the representation with the particularity Rule 9(b) requires: its content (lawful authority to take possession on March 18), the speaker (Vertex, whose writ it was), the time and place (the writ obtained January 23, 2026, cited in the notice delivered at the Property March 6, and presented there March 18), what Vertex obtained (possession of the Property and its contents), and the injury. Id. ¶¶ 30, 34, 40, 118, 120–21, 177–78; *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Vertex says the reliance "runs through public employees" and that Plaintiff cannot have relied both on the cancellation assurances and on the writ. ECF No. 24-1 at 20. The writ was Vertex's, and the deputy who presented it arrived with Vertex's attorney. SAC ¶¶ 30, 39, 57; Part IV, supra. Before March 18, Plaintiff relied on the assurances and did not remove his property, SAC ¶¶ 38, 43; on March 18, he relied on the writ and surrendered possession, id. ¶¶ 40, 177–78. The March 4 writ was never posted, presented, or cited in any notice, so it was not the representation Plaintiff relied on. Id. ¶¶ 34–36, 40.

**J. Count XI (gross negligence).**

Vertex says the SAC identifies no post-conveyance duty. ECF No. 24-1 at 20. The duty is statutory: § 14-836(b)(7) places the pre-possession notice duty on "the plaintiff," and § 8B-2 on "the foreclosure purchaser." Each is Vertex. Part V, supra. Violating a statute that protects a class including the plaintiff is evidence of negligence. *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 78–79 (2003). The SAC also pleads a duty not to act on writs one knows are invalid. SAC ¶ 129.

The SAC pleads reckless disregard. Vertex obtained the January writ while holding no deed and scheduled the March 18 eviction on it, SAC ¶ 30, having done the same for this Property in May 2025 and obtained no-deed writs on at least seven occasions, id. ¶¶ 31 n.1, 46, 79. The

eviction proceeded on that date without the notices Vertex owed. Id. ¶¶ 34–36, 40; Part III, supra. That is "a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbre v. Pope*, 402 Md. 157, 187 (2007).

**K. Count XII (abuse of process).**

Abuse of process has three elements: "first, that the defendant wilfully used process after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process." *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 38 (1997) (citations omitted). The process is the January writ, issued to Vertex when it held no deed. SAC ¶ 30. The post-issuance uses were scheduling the March 18 eviction on that writ without the notices § 14-836(b)(7) and § 8B-2 require, id. ¶¶ 30, 35–36, and executing the eviction on that writ after it was quashed, id. ¶¶ 40, 132. The alleged motive is to seize Plaintiff's property by surprise and use it to force him to drop his appeal against Vertex. Id. ¶¶ 60, 66, 132. Vertex says those post-quashal acts were McQueen's and Tessler's, not its own, ECF No. 24-1 at 21; they are attributable to Vertex for the reasons in Parts III and VII.A, supra. And scheduling a writ one knows was issued without a deed, and executing it without the notices § 8B-3 makes a condition of execution, is not carrying process to its authorized conclusion.

Vertex's argument that the March 4 writ "independently authorized" the loss, ECF No. 24-1 at 21, ignores the allegations that the January writ set the date, was cited in the March 6 notice, and was presented at the door, SAC ¶¶ 30, 34, 40, 82, and the March 4 writ could not lawfully have been executed on March 18 either. Id. ¶ 40; Part III, supra.

**L. Counts XIII and XIV (civil conspiracy and § 1983 conspiracy).**

Both counts require an agreement—to commit an underlying tort (Count XIII) or to deprive Plaintiff of a federal right (Count XIV)—and an overt act causing injury. ECF No. 24-1 at 21–22. At the pleading stage the question is whether the alleged facts make an agreement plausible. Rule 9(b) does not raise that bar. *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 823–24 (D. Md. 2005), which Vertex cites, applied it because the plaintiff alleged a conspiracy to

fraudulently conceal beryllium hazards: "[c]laims of conspiracy to commit fraud must abide by Rule 9(b)'s particularity requirements." Id. at 823. Counts XIII and XIV allege a conspiracy to evict Plaintiff without required notice and seize his property—the trespass, conversion, and Fourth and Fourteenth Amendment violations in Counts I, III, VI, VII, and IX—not to defraud. Rule 8 governs them.

The SAC identifies who agreed, when, and to what. Vertex acted through its attorney Tessler, directed by Schaffel. SAC ¶¶ 12–13. Holman, Vertex's point of contact, scheduled its evictions through private emails with Tessler. Id. ¶¶ 15, 50, 169 & Ex. 7. Vertex scheduled the March 18 eviction under the January writ; within an hour of the quashal, Tessler obtained the March 4 writ, and the March 18 date did not change. Id. ¶¶ 30, 32, 34. The Sheriff's Office told Plaintiff the eviction was "cancelled." Id. ¶¶ 31–34, 37. On March 18, McQueen and Tessler arrived and executed the eviction together, McQueen said Washington knew of it, Washington refused to stop it, and McQueen presented the quashed January writ. Id. ¶¶ 39–42, 151. The shared object was possession on March 18 without required notice. An office assuring a resident that an eviction is cancelled while arranging it with the private party's agent for the original date is not parallel conduct or "ordinary professional contacts," ECF No. 24-1 at 23; it is the factual content *Iqbal* requires.

The agreement is plausibly inferred from that conduct alone, which is the overt-act core the count pleads, SAC ¶ 152; the counts do not depend on the allegations about campaign contributions and political favors, id. ¶¶ 139–48, that Vertex calls speculative. The intracorporate conspiracy doctrine does not apply; the agreement alleged is between Vertex and public officials, not among Vertex's agents. Id. ¶¶ 151, 159. Even if it did, *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985), excepts an agent with "an independent personal stake in achieving the corporation's illegal objective," and Tessler is allegedly paid a percentage of Vertex's profits. SAC ¶ 13. The underlying torts and constitutional violations are pleaded in Counts I–XII, Parts VII.A–K, supra. Tessler's conduct is attributed to Vertex in Part III, supra.

Count XIV rests on the same facts and alleges that the private Defendants acted jointly with named state actors to deprive Plaintiff of his Fourth and Fourteenth Amendment rights. SAC ¶¶ 158–59; Part VII.A, supra. A private party who conspires with public officials to carry out a seizure is liable under § 1983. *Dennis*, 449 U.S. at 27–28. Incorporating Count XIII rather than restating it, ECF No. 24-1 at 23, is not a pleading defect.

**M. Count XV (RICO, 18 U.S.C. § 1962(c)).**

*1. Predicate acts.*

*Mail and wire fraud.* Vertex argues that its writ applications contain no false statement. ECF No. 24-1 at 23–24. A writ of possession in a tax-sale case is available only to a person who "acquires a deed to property under this subtitle." Tax-Prop. § 14-850; Part III, supra. Vertex filed at least eight such applications, in this case and six others, while holding no deed. SAC ¶¶ 30, 31 n.1, 46, 79, 167. Each was filed electronically and was material: the Clerk issued the writs. Id. ¶¶ 30, 46. That five applications "did not even claim Vertex held a deed," ECF No. 24-1 at 24, does not make them true. An application for relief that the statute reserves to deed holders, filed by an applicant that holds none, asserts an entitlement that does not exist; it is not an omission requiring a separate duty to disclose. The eviction notices mailed and the scheduling emails sent on those writs are further mailings and wires in furtherance. SAC ¶¶ 168–69.

Vertex argues that the SAC pleads no deceived recipient because it alleges that the Clerk acted with "malice or deliberate indifference." ECF No. 24-1 at 24. *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), involved false representations to a county in tax-lien auctions that the injured parties never saw. Id. at 643–44. The Court held that a civil RICO plaintiff asserting mail fraud predicates need not show that he, or anyone, relied on the misrepresentation; it is enough that the scheme proximately caused his injury. Id. at 649, 657–58, 661. And the SAC pleads the Clerk's malice and his deliberate indifference in the alternative, SAC ¶¶ 46, 69, 83, as Rule 8(d) permits.

The Sheriff's Office assurances that the eviction was cancelled, SAC ¶ 170, though later in time, are wires in furtherance because they were designed to keep Plaintiff passive until the scheme

was completed. *United States v. Lane*, 474 U.S. 438, 451–53 (1986). They worked: Plaintiff did not remove his property before the seizure. SAC ¶¶ 38, 43, 170. Vertex's objection that no Vertex statement is identified ignores that a defendant who causes a mailing or wire by a co-schemer is liable for it, 18 U.S.C. §§ 1341, 1343; *Pereira v. United States*, 347 U.S. 1, 8–9 (1954), and that Tessler was arranging the eviction with Holman while those assurances were given. SAC ¶¶ 50, 57, 169.

*Extortion.* The SAC alleges that on March 18 McQueen, acting under color of official right, obtained Plaintiff's surrender of the Property by presenting the quashed January writ as lawful process, and that Plaintiff complied because he believed the writ valid. SAC ¶¶ 177–78, 181. Vertex, Schaffel, and Tessler caused or aided that act by procuring the writ and coordinating the eviction. Id. ¶ 179. Possession of the Property and its contents passed to the private Defendants, id. ¶¶ 107–08, and Tessler then conditioned the return of the contents on Plaintiff dismissing his appeal against Vertex and waiving his claims, id. ¶¶ 6, 100. Property was obtained, not merely interfered with. Vertex answers that it did not threaten Plaintiff, display the writ, or act under color of office, and that no property "passed to Vertex." ECF No. 24-1 at 26. One who causes or aids an offense is punishable as a principal whether or not he receives the property. 18 U.S.C. § 2.

A pattern may rest on the mail and wire fraud and extortion predicates alone, and those are pleaded from public court records and Plaintiff's own eviction. Part VII.M.4, infra. That the honest-services, § 2314, and money-laundering predicates rest in part on information and belief, SAC ¶¶ 174, 182–86, is not a defect where, as here, the defendant knows the circumstances it must defend and the plaintiff has "substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. Vertex's argument that ¶ 166 "confirms the defect," ECF No. 24-1 at 24, misreads it: ¶ 166 identifies the communications "within Plaintiff's knowledge or available in public court records"—the writ applications, notices, and scheduling emails pleaded in ¶¶ 167–70—and notes only that communications "in Defendants' exclusive possession" will be sought in discovery. And Vertex's "ordinary post-auction negotiation" explanation for a contract price $89,000 above the public-

auction high bid twelve days earlier, ECF No. 24-1 at 27; SAC ¶¶ 185, 188, 190–91, is a competing inference, not an obvious one.

*2. Noerr-Pennington.*

Petition Clause immunity must appear on the face of the complaint. *Goodman*, 494 F.3d at 464; Standard of Review, supra. It does not.

First, the damages sought are for non-petitioning conduct: the execution of the eviction, the loss of Plaintiff's business and chattels, and the retention of his property, on which Counts V, IX, and XII also rest. The Fourth Circuit affirmed judgment against the RICO plaintiff in *Navient Solutions, LLC v. Lohman*, 136 F.4th 518, 525–26 (4th Cir. 2025), in part because it sought damages only for the immunized lawsuits themselves, "not for pre-suit or non-litigant conduct."

Second, the sham exception applies to "a pattern of baseless, repetitive claims" filed "without regard for the merits." *Waugh Chapel S., LLC v. United Food & Com. Workers Union Local 27*, 728 F.3d 354, 364 (4th Cir. 2013). Vertex answers that its foreclosure judgment and the Deedholders' March 4 writ were not baseless. ECF No. 24-1 at 25. The SAC does not say they were. The sham it alleges is the no-deed writ applications: at least eight, most not even claiming a deed, several filed after the Circuit Court had ruled such writs unlawful, and at least three quashed. SAC ¶¶ 30–31 & n.1, 46, 79, 81. An applicant that repeatedly seeks relief the statute reserves to deed holders, without claiming to hold one, is filing without regard to the merits, and motive and merits are taken from the SAC at this stage.

*3. Operation or management.*

Vertex argues the SAC pleads only its "own affairs" and no "chain of command." ECF No. 24-1 at 28. It pleads both: Schaffel operates Vertex, "the business entity executing the scheme," and directs Tessler; Tessler obtains the writs; Holman schedules evictions on them; McQueen carries them out. SAC ¶¶ 12, 148, 169. Lower-rung participants acting "under the direction of upper management" operate the enterprise, *Reves v. Ernst & Young*, 507 U.S. 170, 179, 184 (1993), and Vertex is the entity through which Schaffel acts. No-deed writ applications are not ordinary tax-sale business. Part VI, supra.

*4. Pattern.*

A pattern requires related predicates that "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Open-ended continuity is shown where the predicates are "a regular way of conducting defendant's ongoing legitimate business." Id. at 243. The predicates are related—each is a no-deed writ application by Vertex followed by an eviction scheduled on it—and continuous: at least eight applications across seven Circuit Court cases; at least three writs quashed; one other owner locked out before the writ against him was quashed; and no-deed writs sought after the Circuit Court had ruled such writs unlawful. SAC ¶¶ 30–31 & n.1, 46–47, 79–81, 167, 180, 192–93. *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238–39 (4th Cir. 2000), involved "only one victim," "essentially a dispute between formerly close family friends," and "commonplace" mail and wire fraud predicates, and contrasted a multi-victim scheme. The SAC alleges a method applied across at least seven properties and their owners, with extortion as a predicate.

*5. Causation.*

Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Vertex's writ set the eviction date, was cited in the posted notice, and was presented at the door, and the eviction dispossessed Plaintiff of his business and property. SAC ¶¶ 30, 34, 40, 82, 194; Part III, supra. There is no intervening victim or more directly injured party. *Bridge*, 553 U.S. at 657–58. The foreclosure judgment, ECF No. 24-1 at 29, did not cause the injury alleged—eviction by surprise, without notice, on a quashed writ, with Plaintiff's property inside. Part I, supra. The March 4 writ could not lawfully have been executed on March 18. Part III, supra. McQueen's presentation of the quashed writ was the execution of Vertex's writ, which Vertex procured and helped carry out. SAC ¶¶ 40, 179.

**N. Count XVI (RICO conspiracy, 18 U.S.C. § 1962(d)).**

Section 1962(d) does not require that the defendant agree to commit a predicate act himself; "it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v.*

*United States*, 522 U.S. 52, 65 (1997). Vertex's derivative argument fails because Count XV states a claim. Part VII.M, supra.

Vertex also argues that no fact shows its agreement, and that the coordinated conduct shows only that officers and counsel "performed different roles in processing and executing a writ." ECF No. 24-1 at 30. The conduct pleaded in Parts VII.A and VII.L—no-deed writ applications here and in six other cases, evictions scheduled on them by private email with Holman, and execution by Tessler and McQueen while the Sheriff's Office called the eviction cancelled—is not the processing of a valid writ, does not rest on information and belief, and is the pattern alleged in Count XV carried out through Vertex. SAC ¶¶ 30, 46, 50, 57, 148, 151, 169, 197 & Ex. 7. An entity that applies for the process, schedules its execution, and sends its agent to the door has adopted the goal of facilitating the scheme.

**VIII. The Court should retain supplemental jurisdiction.**

Vertex's request to decline supplemental jurisdiction depends on dismissal of every federal claim against it; Counts I, III, XIV, XV, and XVI survive. The federal and state claims against the other Defendants remain here regardless, so dismissing the state-law claims against Vertex alone would send one set of facts to two courts. Judicial economy, convenience, and fairness favor resolving the claims in one proceeding. 28 U.S.C. § 1367(a), (c); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

**IX. Any dismissal should be without prejudice.**

Vertex asks for dismissal with prejudice, but leave to amend is freely given absent futility, bad faith, or prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court has set a schedule for a further motion for leave to amend. ECF No. 52. To the extent the Court finds any count deficient as pleaded against Vertex, Plaintiff requests that the dismissal be without prejudice.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant Vertex TL LLC's Motion to Dismiss, ECF No. 24.

Respectfully submitted,

Fausto Gomez
Plaintiff Pro Se
9315 Oak White Rd.
Nottingham, MD 21236
443-627-0201
FaustoGomez3080@hotmail.com

## EXHIBITS

| | |
|---|---|
| Exhibit 1 | Gomez v. Vertex TL, LLC, No. ACM-REG-1791-2025 (App. Ct. Md.), Brief of Appellant (filed Feb. 9, 2026), excerpt: cover, Statement of the Case, Issues Presented (Br. i, 1–3) |
| Exhibit 2 | Gomez v. Vertex TL, LLC, et al., No. ACM-REG-0512-2026 (App. Ct. Md.), Brief of Appellant (filed Sept. 4, 2026), excerpt: cover, Statement of the Case, Questions Presented (Br. i, 1–2) |
| Exhibit 3 | Vertex TL, LLC v. Gomez, No. C-24-CV-24-004451 (Cir. Ct. Balt. City), Request for Writ of Possession filed March 4, 2026, on behalf of Mohamed Dahan Shahbain, Hadaf Anwar Alsamet, and Mohamed Abdo Alnisafi |

## CERTIFICATE OF SERVICE

I certify that foregoing was filed with the Clerk of the Court and served on all counsel of record through the Court's CM/ECF system.

Fausto Gomez