**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| FAUSTO GOMEZ, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:26-cv-01445-MJM |
| | * | |
| YISROEL ARYEH SCHAFFEL, *et al.*, | * | |
| | * | |
| Defendants. | * | |

**PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS FILED BY DEFENDANTS EARL McQUEEN, GLENDA HOLMAN, AND KENYATTA WASHINGTON (ECF No. 27)**

Plaintiff Fausto Gomez, proceeding pro se, opposes the Motion to Dismiss filed by Defendants Earl McQueen, Glenda Holman, and Kenyatta Washington (the "Sheriff Defendants"), ECF No. 27, and the supporting Memorandum, ECF No. 27-1 (the "Memorandum" or "Mem."). The Motion is directed to the Second Amended Complaint, ECF No. 11 ("SAC").

The Motion's central premise is that Deputy McQueen "served a facially valid writ of possession on March 18, 2026," Mem. at 5, referring to the writ issued on March 4, Mem. at 6. Plaintiff does not dispute that a writ was issued on March 4, hours after the January 23 writ was quashed. SAC ¶ 32. But the claims against the Sheriff Defendants turn not on which writ existed but on what they did. The Second Amended Complaint alleges that the March 18 eviction was scheduled on the January 23 writ, which the Circuit Court quashed on March 4; that Defendants Holman and Washington told Plaintiff, in writing and by phone, that the eviction was cancelled and removed it from the Sheriff's Office's public schedule; that no sufficient notice of an execution under the new writ was ever given; and that on March 18, Deputy McQueen executed the eviction anyway and presented the quashed January 23 writ as its basis. SAC ¶¶ 30–43.

On those facts, neither writ helps the Sheriff Defendants. If the eviction proceeded under the January 23 writ, it proceeded on process the Circuit Court had quashed. If it proceeded under the March 4 writ, it proceeded without the notice required by Md. Code Ann., Tax-Prop. § 14-836(b)(7) and Baltimore City Code Art. 13, § 8B-2, and after Defendants Holman and Washington had told Plaintiff the eviction would not occur. Section 8B-3(a) addresses that situation directly: where the sheriff reasonably believes the required notice was not given, the sheriff "shall notify the Circuit Court and may not execute the writ of possession until further order of the Court." Balt. City Code, Art. 13, § 8B-3(a). The Memorandum does not address those assurances or explain how the notice periods could have run.

The Motion fails for five reasons, and dismissal with prejudice would in any event be improper. First, on the facts alleged, the Sheriff Defendants are not entitled to qualified immunity under either writ, and the Memorandum does not address the conduct alleged against Defendants Holman and Washington or the due process claim. Second, § 8B-3(a) placed a duty on the Sheriff Defendants themselves, so the argument that notice was someone else's responsibility does not answer the claims. Third, the *Rooker-Feldman* doctrine does not apply, because Plaintiff seeks no review of any state-court judgment. Fourth, the Second Amended Complaint pleads facts showing malice and gross negligence, which defeats immunity under the Maryland Tort Claims Act. Fifth, the arguments adopted from Defendant Schleifer's motion concern the allegations against Schleifer and do not transfer to the Sheriff Defendants.

**BACKGROUND**

The Second Amended Complaint alleges the following facts.

Plaintiff occupied 229 N. Monroe Street, Baltimore, where he operated a deli and convenience store on the ground floor and maintained a residential apartment on the upper floor.

SAC ¶¶ 1, 10. Vertex TL LLC obtained a judgment foreclosing the right of redemption on March 6, 2025. SAC ¶ 23. On December 3, 2025, Vertex obtained a deed and, the same day, conveyed the property to Defendants Shahbain, Alsamet, and Alnisafi. SAC ¶ 29. On January 23, 2026, Vertex, which no longer held the deed, obtained a writ of possession from the Clerk and used it to schedule an eviction for March 18, 2026. SAC ¶ 30.

On March 4, 2026, the Circuit Court quashed the January 23 writ because Vertex was not the deed holder. SAC ¶ 31. That day, Plaintiff's representative sent the order to Defendants Holman and Washington and asked that the March 18 eviction be cancelled. Defendant Holman replied: "Received and cancelled." SAC ¶ 31; ECF No. 11-8 at 7. Within an hour of being served with the order, Defendant Tessler applied for a new writ on behalf of the deed holders; the Clerk issued it at 4:17 p.m. on March 4. SAC ¶ 32. Plaintiff's representative sent the new writ to Defendants Holman and Washington and asked whether it would affect the eviction schedule; neither responded. SAC ¶ 33. On March 5, after Plaintiff's representative noted that the March 18 eviction still appeared on the Sheriff's Office website, Defendant Washington wrote: "our system was updated showing the warrant was quashed. I recommend refreshing the browser then selecting it again." The listing was removed within the hour. SAC ¶ 33; ECF No. 11-8 at 5.

On March 6, Deputy McQueen delivered to the property a written eviction notice that referenced the quashed January 23 writ and specified a March 18 eviction date. SAC ¶ 34. Asked about it, Defendant Washington wrote on March 9: "that posting had already been assigned to the deputy's workload but yes that Writ of Possession has been canceled. We apologize for any confusion this may have caused." SAC ¶ 34; ECF No. 11-8 at 4. On March 9, Plaintiff received a letter from Defendant Tessler, postmarked March 6, stating that Tessler's clients intended to take possession; it did not state an eviction date. SAC ¶ 35. Those two documents were the only

eviction-related papers Plaintiff received before March 18, and no eviction date was ever set or noticed under the March 4 writ. SAC ¶¶ 36, 43. Between March 9 and March 18, Defendant Washington told Plaintiff's representative by phone that his office controlled the scheduling and that he would not allow a March 18 eviction. SAC ¶ 37. Plaintiff relied on those statements. SAC ¶ 38.

On March 18, 2026, Deputy McQueen, in uniform and armed, executed the eviction with a representative of the private Defendants present. SAC ¶ 39. He presented Plaintiff with the quashed January 23 writ as the legal basis for the eviction. SAC ¶ 40. During the eviction, Plaintiff's representative told Deputy McQueen by phone that Lieutenant Washington had assured them it would not take place on March 18. Deputy McQueen said Washington was aware of the eviction and that McQueen would stop it if Washington ordered him to. SAC ¶ 41. Plaintiff's representative then called Washington and asked him to reschedule. Washington refused, stating that he could not intervene because McQueen and the private Defendants' representative were already on site and that he could stop the eviction only on a court order. SAC ¶ 42. Neither McQueen nor Washington asked whether Plaintiff had received the statutory notices, and neither referred the question to the Circuit Court. SAC ¶¶ 65, 85. Because the eviction was a surprise, Plaintiff's business inventory, cash, equipment, and personal belongings were inside the building and were seized. SAC ¶¶ 5, 43. The Sheriff's Office has not filed the required post-eviction paperwork with the Circuit Court. SAC ¶ 44. The Second Amended Complaint also alleges that Defendant Holman gave the private Defendants preferential scheduling through private email exchanges with Defendant Tessler, SAC ¶ 50 & Ex. 7, and that the Sheriff Defendants acted with malice for the benefit of the private Defendants. SAC ¶¶ 59–66.

## LEGAL STANDARD

A complaint survives a motion under Rule 12(b)(6) if its factual allegations, accepted as true with all reasonable inferences drawn in the plaintiff's favor, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013). A pro se pleading is construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Review is confined to the complaint, documents attached to or integral to it, and matters subject to judicial notice. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); Fed. R. Civ. P. 12(d). The Court may take judicial notice of public records, including state-court orders, but must construe them in the light most favorable to the plaintiff and may not treat their contents as established facts contradicting the complaint. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); *see also Goines*, 822 F.3d at 167 (a document attached to a complaint for a purpose other than the truth of its contents does not establish those contents). Conditions of mind, including malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b).

Qualified immunity is a defense the official must establish by showing either that the facts alleged do not make out a constitutional violation or that the right was not clearly established. *Owens v. Balt. City State's Att'ys Office*, 767 F.3d 379, 395–96 (4th Cir. 2014). Raised on a Rule 12(b)(6) motion, "the defense faces a formidable hurdle" and "is usually not successful," because a plaintiff need only plausibly allege such a violation. *Id.* at 396 (internal quotation marks omitted); *Tobey*, 706 F.3d at 385, 387. Immunity under the Maryland Tort Claims Act likewise turns on whether the complaint sufficiently alleges malice or gross negligence. *Barbre v. Pope*, 402 Md. 157, 181–82 (2007).

## ARGUMENT

### I. The Sheriff Defendants Are Not Entitled to Qualified Immunity on the Federal Claims (Counts I, III, and XIV).

#### A. Neither Writ Could Lawfully Have Been Executed on March 18.

The Memorandum's qualified-immunity argument rests on the assertion that "Deputy McQueen served a facially valid writ of possession on March 18, 2026," Mem. at 5, meaning the writ "issued by the Baltimore City Circuit Court Clerk's Office on March 4, 2026," Mem. at 6. The Second Amended Complaint alleges that the writ Deputy McQueen presented was the January 23 writ, which the Circuit Court had quashed. SAC ¶ 40. The Memorandum's contrary premise is a factual assertion, not a ground for dismissal. *Iqbal*, 556 U.S. at 678. And on the facts alleged, neither writ could lawfully have been executed that day.

*The January 23 writ.* Vertex obtained this writ when it no longer held the deed and used it to schedule the March 18 eviction. SAC ¶ 30. On March 4, the Circuit Court quashed it because Vertex was not the deed holder. SAC ¶ 31. Defendants Holman and Washington received the order that day; Holman replied "Received and cancelled," and Washington confirmed that the writ was recorded as quashed and the eviction removed from the Sheriff's Office's public schedule. SAC ¶¶ 31, 33; ECF No. 11-8 at 5–7. A quashed writ confers no authority to execute.

*The March 4 writ.* The Clerk issued this writ at 4:17 p.m. on March 4, fourteen days before the eviction. SAC ¶ 32. Tax-Property § 14-836(b)(7) requires written notice, mailed and posted, at least thirty days before possession is taken. Baltimore City Code Art. 13, § 8B-2 (residential property, SAC ¶ 1) requires the foreclosure purchaser to mail notice of the date on which the writ is first scheduled to be executed at least fourteen days before that date and to post it at least seven days before. No notice satisfying either statute preceded the March 18 execution: no execution date was ever set on the March 4 writ, the only posting referred to the January 23 writ, and the

only letter, postmarked March 6, stated no date. SAC ¶¶ 34–36, 40, 43, 58. Nor could the fourteen-day mailing period have run: the writ did not exist until the afternoon of March 4, and the only mailing was postmarked March 6. Under § 8B-3(a), where the sheriff reasonably believes the § 8B-2 notice was not given, the sheriff "shall notify the Circuit Court and may not execute the writ of possession until further order of the Court." Because the Sheriff Defendants had reason to believe no § 8B-2 notice had been given (Part I.D below), § 8B-3(a) required them to refer the March 4 writ to the Circuit Court, not execute it.

Defendants Holman and Washington knew both facts. Their office recorded the January 23 writ as quashed, and they confirmed the cancellation in writing three times. They received a copy of the March 4 writ the day it issued, with a question whether it would change the schedule; neither answered. SAC ¶¶ 31, 33–34. The eviction nevertheless went forward on March 18, the date set under the quashed writ, and Deputy McQueen presented the January 23 writ as its basis. SAC ¶¶ 39–40. The Second Amended Complaint alleges that this was not an accident: the March 4 writ showed on its face that it had issued fourteen days earlier, while the January 23 writ carried the March 18 date. SAC ¶ 40. Which document was presented is evidence of what the Sheriff Defendants knew, but the claims do not depend on it. Under either writ, the March 18 execution was one the law did not permit.

The state-court orders attached to the Memorandum do not change this. They establish that a writ was issued on March 4, 2026, and that the Circuit Court declined to vacate the judgment or to quash the March 4 writ under Tax-Property § 14-850. Exs. B, D, F. They do not address whether the pre-execution notices were given or could have been given in time, what the Sheriff Defendants knew, what they told Plaintiff, or which document was presented on March 18. Those are the facts

on which the claims turn, and the orders cannot be used to contradict the complaint on them. *Zak*, 780 F.3d at 607.

### B. The Sheriff Defendants Are Not Entitled to Qualified Immunity on the Fourth Amendment Claim (Count I).

Qualified immunity is unavailable if the facts alleged show a violation of a constitutional right and the right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Both prongs are met.

*Prong one: the facts alleged state a Fourth Amendment violation.* The seizure of a person's residential and business premises and belongings in the course of an eviction is a seizure within the meaning of the Fourth Amendment, and whether the officers acted pursuant to a valid court order is central to whether the seizure is reasonable. *Soldal v. Cook County*, 506 U.S. 56, 61–62, 71–72 (1992) (had the ejection "properly awaited the state court's judgment," a § 1983 suit would have been unlikely). The Memorandum agrees: "The Fourth Amendment presupposes the valid issuance of a judicial writ." Mem. at 6.

On the facts alleged, no valid authorization for a March 18 seizure existed under either writ. Under the January 23 writ, the eviction was executed on process a judge had quashed, the opposite of an ejection that "properly awaited the state court's judgment." *Soldal*, 506 U.S. at 71. Under the March 4 writ, it was executed on a date when § 8B-3(a) forbade execution, because the required notice had not been and could not have been given. Part I.A above. Reasonableness requires "a careful balancing of governmental and private interests," *id.*, and the circumstances alleged are that the Sheriff Defendants executed the eviction on a date Holman and Washington had told the occupant was cancelled, after removing it from the public schedule, without sufficient notice under the writ they now invoke, and while presenting a writ they knew was quashed. SAC ¶¶ 31–43. A seizure carried out in that manner is not reasonable under either writ.

*Prong two: the right was clearly established. Soldal* established in 1992 that an eviction is a Fourth Amendment seizure whose reasonableness turns on whether the officers acted under valid court authority, and identified a seizure that has not "properly awaited the state court's judgment" as the case in which § 1983 liability follows. 506 U.S. at 61–62, 71–72. The rule for officers acting on process has been equally clear since *Malley v. Briggs*, 475 U.S. 335 (1986): immunity protects "all but the plainly incompetent or those who knowingly violate the law," *id.* at 341, and the issuance of judicial process "does not end the inquiry into objective reasonableness." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (applying *Malley*, 475 U.S. at 341). An officer who executes a writ that his own office has recorded as quashed, and that his supervisor has confirmed in writing was cancelled, knowingly violates the law. *See also* Part I.D below.

The Memorandum's authorities are not to the contrary. *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998), held that no false-arrest claim lies against deputies who arrested on a facially valid warrant from a magistrate, and *Rovin v. State*, 488 Md. 144 (2024), involved an arrest on a warrant issued by a judicial officer after review by prosecutors. Both rest on process a neutral judicial officer had issued, that remained in force, and that the officer had no duty to question. Neither involved process a judge had quashed or a writ that § 8B-3(a) forbade the sheriff to execute on that date. Part I.D below. And even under *Rovin*, "the warrant is not an absolute shield," 488 Md. at 186; the presumption of validity fails where the process is so deficient "that the executing officers cannot reasonably presume it to be valid," *id.* at 192. A writ the Sheriff's Office itself recorded as quashed is such process.

The Memorandum argues that Plaintiff must "identify a case where an officer acting under similar circumstances was held to have violated the law." Mem. at 6. A materially similar case is not required: "general statements of the law are not inherently incapable of giving fair and clear

warning" and may "apply with obvious clarity to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (per curiam) (vacating grant of qualified immunity without a factually similar case because "no reasonable correctional officer could have concluded" the conduct was permissible); *Owens*, 767 F.3d at 399 (a right may be clearly established by "any number of sources, including a criminal case, a statute, or the Constitution itself"). Executing a seizure on process a judge has voided, or on a writ the governing ordinance forbids the sheriff to execute without notice that was never given, is an obvious case. This was not a split-second judgment in a dangerous encounter; it was a scheduled civil execution, carried out two weeks after the Sheriff's Office had received the order quashing the writ and cancelled the eviction. SAC ¶¶ 31–34.

*Knowledge is adequately alleged.* The Memorandum characterizes Plaintiff's theory as a claimed "right to refuse to execute a judicial writ" and argues that Plaintiff "conflates qualified immunity analysis with ordinary negligence." Mem. at 8–9. The claim is that the Sheriff Defendants knew of both defects and executed anyway. The Second Amended Complaint alleges that Deputy McQueen presented a writ "he knew had been quashed," SAC ¶ 63; that the choice "was not an accident," SAC ¶ 40; that Holman and Washington "knew Plaintiff believed the eviction had been cancelled" and "chose to evict Plaintiff by surprise," SAC ¶ 60; that the Sheriff Defendants "willfully" violated § 8B-3(a), SAC ¶ 65; and that they acted to retaliate against Plaintiff and to help the private Defendants use his property as leverage, SAC ¶ 66.

The facts supporting that inference are set out in the Background and Part I.A. SAC ¶¶ 31, 33–34, 36–37, 41–42; ECF No. 11-8 at 4–7. The phrase "knew or should have known" in paragraph 58 applies to every Defendant, including the private Defendants; it does not withdraw the specific allegations of knowledge against the Sheriff Defendants. If the Sheriff Defendants contend that

presenting the quashed writ was a clerical mistake, that is a factual defense for a later stage. *See Owens*, 767 F.3d at 396.

### C. The Notice Period Runs From the Notice, Not the Judgment, and the Complaint Alleges That No Statutory Notice Was Given.

The Memorandum argues that Plaintiff's notice theory is "incorrect" because Tax-Property § 14-836(b)(7) requires notice "after issuance of the judgment foreclosing right of redemption" and the judgment was entered in March 2025. Mem. at 7. The statute requires the plaintiff, "after issuance of the judgment foreclosing right of redemption and at least 30 days before taking possession of the property," to give any tenant written notice of its intention to obtain possession and that the tenant must vacate within 30 days after the notice, sent by first-class mail with certificate of mailing and posted on the property within five days of mailing. Md. Code Ann., Tax-Prop. § 14-836(b)(7)(i), (iii)–(iv). The thirty days run from the notice, not from the judgment; the judgment fixes only the earliest point at which notice may be given. Subparagraph (ii), which permits the plaintiff to "apply for, process, and obtain, but not execute upon," a writ during the thirty days after judgment, confirms that execution must await the notice period.

The Memorandum next asserts that "Mr. Gomez does not contend that he never received written notice of the intent to take possession of the property." Mem. at 7. Plaintiff's contention is that nothing he received was the statutory notice. The Second Amended Complaint alleges that the only eviction-related papers he received before March 18 were the March 6 posting based on the quashed writ and Defendant Tessler's letter postmarked March 6, SAC ¶ 36; that the letter stated no eviction date and was mailed twelve days before the eviction, SAC ¶ 35; that "Plaintiff did not receive the notice required by Md. Code, Tax-Prop. § 14-836(b)(7)," SAC ¶ 58; and that Defendants "never provided the legally required notice, and never provided an official eviction date," SAC ¶ 43. A letter mailed twelve days before the eviction and stating no date is neither the

thirty days' notice § 14-836(b)(7) requires nor the fourteen days' notice of the scheduled execution date § 8B-2 requires. Nor does the observation that "at least three writs of possession followed during the litigation," Mem. at 7, supply the missing notice. A writ is not the notice § 14-836(b)(7) requires, and the May 2025 and January 2026 writs were both quashed and the evictions scheduled on them cancelled. SAC ¶ 31 & n.1.

Section 8B-2, which applies to residential property, was not satisfied either. Plaintiff maintained a residential apartment on the upper floor. SAC ¶ 1. That section requires notice "of the date on which the writ of possession is first scheduled to be executed by the Sheriff," mailed at least fourteen days and posted at least seven days before that date, stating the eviction date and the consequences for personal property. Balt. City Code, Art. 13, § 8B-2. Once Defendants Holman and Washington cancelled the March 18 date and removed it from the Sheriff's Office website, there was no scheduled execution of which Plaintiff had notice. SAC ¶¶ 31, 33. No such notice was mailed or posted under the March 4 writ: the March 6 posting cited the quashed January writ, whose cancellation Lieutenant Washington confirmed, and Defendant Tessler's March 6 letter, the only mailed paper, stated no date. SAC ¶¶ 34–36, 43. The Memorandum's statement that "Mr. Gomez does not claim that he never received notice of the first scheduled date," Mem. at 7, is contradicted by SAC ¶ 43.

**D. Section 8B-3(a) Placed a Mandatory Duty on the Sheriff Defendants.**

The Memorandum acknowledges that under § 8B-3(a), the sheriff "shall notify the Circuit Court and may not execute the writ of possession until further order of the Court" if the sheriff "reasonably believes" that the occupant was not given the notice required by § 8B-2. Mem. at 7. That provision places a mandatory duty on the sheriff directly, and it contemplates that the sheriff as well as the purchaser may give notice: it applies when the sheriff reasonably believes that

"neither the Sheriff nor the foreclosure purchaser" gave it. Balt. City Code, Art. 13, § 8B-3(a). The Memorandum's statement that the sheriff "has no independent duty to investigate whether the plaintiff in the underlying foreclosure has complied with pre-deprivation notice requirements," Mem. at 9, contradicts the ordinance the Memorandum quotes and cites no authority. Mem. at 9 ("See [cite].").

The Second Amended Complaint alleges facts giving the Sheriff Defendants reason to believe notice had not been given: Holman had cancelled the March 18 eviction; Washington had removed it from the public schedule, confirmed in writing that the writ behind the March 6 posting was quashed, and said he would not allow a March 18 eviction; neither answered whether the new writ changed the schedule; and on March 18 both McQueen and Washington were told that Plaintiff had been assured it would not occur. SAC ¶¶ 31, 33–34, 37, 41–42. Neither withheld execution or invoked § 8B-3(a), SAC ¶¶ 65, 85, 127; Washington instead stated that only a court order could stop the eviction, SAC ¶ 42. Section 8B-3(a) directs the opposite: the sheriff must stop and seek the court's order. Those allegations state a violation of a duty the ordinance imposes on the sheriff, not a demand that the sheriff "audit compliance with complex notice statutes." Mem. at 9.

Section 8B-3(a) bears on the qualified-immunity analysis in four ways. First, it removes the premise of the Memorandum's argument that a sheriff "shall serve all papers directed to [them]" and that challenges to a writ belong in court rather than in a suit against the executing officer. Mem. at 6. The ordinance conditioned the sheriff's authority to execute on notice and assigned to the sheriff, not the occupant, the duty to bring the question to the court. *Porterfield* and *Rovin* involved arrests on warrants that a judicial officer had issued and that remained in force. Part I.B above. Second, § 8B-3(a) fixes when the sheriff could execute, and whether officers acted under

valid authority is central to Fourth Amendment reasonableness. *See Soldal*, 506 U.S. at 71–72. Third, it establishes that pre-deprivation process existed and that the Sheriff Defendants controlled it. *Zinermon v. Burch*, 494 U.S. 113, 136–39 (1990); Part I.E below. Fourth, a written rule addressed to the sheriff, prescribing what to do in this situation, supports the conclusion that the officers knew their conduct was wrongful. *See Hope*, 536 U.S. at 743–45 (state regulation and Department of Justice report supported conclusion drawn from case law). A violation of § 8B-3(a) does not by itself defeat qualified immunity, *see Davis v. Scherer*, 468 U.S. 183, 194 (1984) (officials "do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"); the ordinance matters because it fixes the scope of the Sheriff Defendants' authority, *cf. id.* at 193 n.11 (state law "may bear upon a claim under the Due Process Clause" where it creates the property interest), and the process they controlled, *Zinermon*, 494 U.S. at 136–39.

The Memorandum calls the sheriff's role "ministerial," Mem. at 9, but the conduct alleged, giving assurances to an occupant, scheduling evictions through a private channel with the purchaser's attorney, and choosing which writ to present, SAC ¶¶ 31–38, 50, 60–62, was governed by the mandatory procedure in § 8B-3(a) and by the State standards of conduct requiring honesty and impartiality, COMAR 01.01.2023.01 ¶¶ A, F, L; Mem. at 10. Those standards do not supply the constitutional right; they are part of the record against which the reasonableness of the officers' conduct is judged.

### E. The Memorandum Does Not Address Defendants Holman and Washington or the Due Process Claim (Count III).

Liability under § 1983 turns on each defendant's own conduct. *Iqbal*, 556 U.S. at 676 (a plaintiff must plead that each official, "through the official's own individual actions, has violated the Constitution"). The Memorandum analyzes only Deputy McQueen's execution of the writ and

does not address the conduct alleged against Defendants Holman and Washington or Count III. It therefore supplies no ground for dismissing those claims, whatever the merits of its argument as to McQueen. Defendant Holman is alleged to have confirmed to Plaintiff that the March 18 eviction was cancelled, to have given the private Defendants preferential scheduling through private email exchanges with their attorney, and to have scheduled the eviction inside the notice period. SAC ¶¶ 15, 31, 50, 61, 128, 135. Defendant Washington is alleged to have confirmed in writing, twice, that the writ was quashed and the listing removed, to have assured Plaintiff's representative by phone that he would not allow a March 18 eviction, and then, when the eviction was underway, to have refused to stop it while misstating his authority under § 8B-3. SAC ¶¶ 17, 33–34, 37, 42, 62, 126. Both are alleged to have known that Plaintiff believed the eviction was cancelled and to have let it proceed by surprise so that he could not remove his property first. SAC ¶¶ 60, 64.

Those allegations state a procedural due process claim (Count III) against all three Sheriff Defendants, which requires a protected property interest, deprived by state action, through constitutionally inadequate procedures. *Todman v. Mayor & City Council of Balt.*, 104 F.4th 479, 487–88 (4th Cir. 2024). Plaintiff's possession of the premises pending lawful execution, and the inventory, cash, equipment, and belongings inside, are protected interests. *Fuentes v. Shevin*, 407 U.S. 67, 86–87 (1972) ("any significant property interest," including "continued possession and use"); *Todman*, 104 F.4th at 487–88 (belongings retained through eviction); SAC ¶¶ 5, 43. The Sheriff Defendants carried out the deprivation. The process due is notice reasonably calculated to inform the person of the pending deprivation and an opportunity to be heard before property is taken. *Fuentes*, 407 U.S. at 80–82; *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Having told Plaintiff the eviction was cancelled, Holman and Washington knew he had no

notice of one, and when the government knows its notice has not reached the owner, it must take further reasonable steps before proceeding. *Jones v. Flowers*, 547 U.S. 220, 225–27, 229–30 (2006). For a Baltimore City eviction, the notice must state the eviction date and the consequences for personal property left behind. *Todman*, 104 F.4th at 488–92.

The deprivation was not a random, unauthorized act for which post-deprivation remedies suffice. It occurred at a predictable point, the execution of the writ, and pre-deprivation process existed: § 8B-3(a) required the Sheriff Defendants themselves to halt and refer the notice question to the Circuit Court. *Zinermon*, 494 U.S. at 136–39; SAC ¶¶ 42, 65, 85. The right was clearly established: *Fuentes*, *Mullane*, and *Jones* predate the eviction by decades, *Todman* by nearly two years, and a factually identical case is not required where the violation is obvious. Part I.B above. Telling an occupant in writing that the eviction is cancelled and then executing it on that date on a quashed writ is an obvious case. SAC ¶¶ 31–43, 84–85.

## II. The Memorandum's "No Duty" Argument Fails for the Same Reasons.

Part II of the Memorandum argues that any failure of pre-deprivation notice "is not attributable to the Sheriff's Office Defendants" because the statutes place the duty to give notice on the foreclosure purchaser. Mem. at 9. That argument addresses only the notice theory; it says nothing about the execution of a quashed writ or about the assurances that the eviction was cancelled, and those allegations support Counts I and III on their own. Nor does Plaintiff allege that the Sheriff Defendants had to mail the § 14-836(b)(7) or § 8B-2 notices. He alleges that neither writ could lawfully have been executed on March 18, SAC ¶¶ 31–32, 40; that § 8B-3(a) required the Sheriff Defendants, once they had reason to believe the notices had not been given, to withhold execution and refer the matter to the Circuit Court, and that they had such reason and executed anyway, SAC ¶¶ 26, 40, 65, 85, 127; and that Holman and Washington told him the eviction was

cancelled and then allowed it to proceed on that date, SAC ¶¶ 31–38, 60–62. None of those claims imposes the purchaser's mailing obligation on the Sheriff.

The duties the Sheriff Defendants are alleged to have breached are their own, and they come from three sources. First, a sheriff may execute only valid process. The statute the Memorandum cites directs sheriffs to serve papers "according to their instructions," Md. Code Ann., Cts. & Jud. Proc. § 2-301, and the writ is the instruction. Md. Rule 2-647; Mem. at 6–7. A quashed writ gives no instruction, and a writ the ordinance forbids the sheriff to execute on a given date gives none for that date. Second, § 8B-3(a) itself forbids execution and requires referral to the Circuit Court when the sheriff has reason to believe notice was not given; the Memorandum quotes the ordinance that imposes that duty. Mem. at 7; Part I.D above. Third, Holman and Washington told Plaintiff the eviction was cancelled; officials who know the occupant has no notice must take further reasonable steps before proceeding. SAC ¶¶ 31, 33, 37; *see Jones v. Flowers*, 547 U.S. at 229–30; Part I.E above. None of these duties belongs to the foreclosure purchaser.

The Memorandum's suggestion that Plaintiff's "remedy lies against Vertex and/or the Clerk's Office," Mem. at 9, is not a basis for dismissal. Plaintiff has sued Vertex, its principal, its attorney, the deed holders, and the Clerk, and claims against them do not immunize the Sheriff Defendants for their own conduct. 42 U.S.C. § 1983; *Iqbal*, 556 U.S. at 676 (liability turns on each official's "own individual actions").

## III. The ***Rooker-Feldman*** Doctrine Does Not Bar Claims Against the Sheriff Defendants.

The Memorandum asserts, without citation, that "the *Rooker-Feldman* doctrine applies to bar claims of injuries resulting from the tax sale judgment and the issuance of the writ of possession." Mem. at 5. The doctrine does not apply, for three reasons.

First, the doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Thana v. Bd. of License Comm'rs*, 827 F.3d 314, 319 (4th Cir. 2016). Since *Exxon Mobil*, the Fourth Circuit has "never, in a published opinion, held that a district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine." *Thana*, 827 F.3d at 320. As against the Sheriff Defendants, Plaintiff does not ask this Court to review or reject any state-court judgment. He does not seek to set aside the foreclosure judgment, restore title, or quash any writ. He seeks damages from the individuals who carried out the March 18 eviction for how they carried it out. SAC ¶¶ 55–66, 73 & Prayer for Relief. The judgment did not authorize an eviction without statutory notice, execution on a quashed writ, or state officials telling Plaintiff the eviction was cancelled and then carrying it out. No state court has ruled on any of those questions.

Second, the injuries alleged were caused by the Sheriff Defendants' conduct, not by a state-court judgment. The question is whether the plaintiff "seeks redress for an injury caused by the state-court decision itself"; if "he is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718 (4th Cir. 2006); *Thana*, 827 F.3d at 320 (an "independent claim" is not barred). An injury caused by others "may be 'ratified, acquiesced in, or left unpunished by' a state-court decision without being 'produced by' the state-court judgment." *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020). The false assurances, the removal of the listing, the presentation of a quashed writ, the execution inside the notice period, and the refusal to halt are the Sheriff Defendants' acts. The only state-court order that bears directly on them is the March 4, 2026 order quashing the January 23 writ, on which Plaintiff relies. SAC ¶ 31. As to that order Plaintiff was not a state-court loser. *Hulsey*, 947 F.3d at 251. Paragraph 49

criticizes the reasoning of the later order denying the motion to quash the March 4 writ, but the claims against the Sheriff Defendants do not depend on that order being wrong, and Plaintiff seeks no relief from it here.

Third, the questions this case presents were not decided in the state court, and the Sheriff Defendants were not parties there. The foreclosure action decided whether the right of redemption should be foreclosed. Plaintiff asks the Court to take judicial notice of the statements of the case and questions presented in his briefs in the two pending appeals, excerpts of which are attached as Exhibits 1 and 2 to this Opposition ("Opp. Ex."). Fed. R. Evid. 201(b)(2), (c)(2); *Zak*, 780 F.3d at 607. No. ACM-REG-1791-2025, from the September 17, 2025 order, asks whether Vertex's defective service was constructive fraud warranting vacatur of the judgment and whether the Circuit Court had in rem jurisdiction to enter it. Opp. Ex. 1 (Br. of Appellant, *Gomez v. Vertex TL, LLC*, No. ACM-REG-1791-2025 (App. Ct. Md. filed Feb. 9, 2026)) at 1–3. No. ACM-REG-0512-2026, from the order denying Plaintiff's motion to quash the March 4 writ and the April 27, 2026 order denying reconsideration, asks two questions: whether Tax-Property § 14-850 entitles transferees who took their deed by private conveyance to a writ without a judgment awarding possession, and whether the Clerk may issue a writ to non-parties who hold no such judgment. Opp. Ex. 2 (Br. of Appellant, *Gomez v. Vertex TL, LLC*, No. ACM-REG-0512-2026 (App. Ct. Md. filed Sept. 4, 2026)) at 1–2; SAC ¶ 49 & SAC Ex. 2. Both orders were entered after the eviction. Neither appeal presents any question about the pre-execution notices, the document Deputy McQueen presented on March 18, the Sheriff Defendants' statements to Plaintiff, or damages. Any overlap with those proceedings is a matter of preclusion, which is not jurisdictional and which the Memorandum does not raise. *Exxon Mobil*, 544 U.S. at 293; *Thana*, 827 F.3d at 320.

## IV. The Maryland Tort Claims Act Does Not Bar the State-Law Claims (Counts II, IV–VII, and IX–XIII).

The Sheriff Defendants invoke Md. Code Ann., Cts. & Jud. Proc. § 5-522(b), which immunizes State personnel. It does not apply to claims under § 1983. *Howlett v. Rose*, 496 U.S. 356, 375–78 (1990). As to the state-law claims, the statute immunizes only a tortious act or omission "made without malice or gross negligence," Cts. & Jud. Proc. § 5-522(b), and the immunity is lost when the complaint alleges facts showing either. *Barbre*, 402 Md. at 181–82; *Lee v. Cline*, 384 Md. 245, 266–68 (2004) (applying the same rule to Maryland constitutional torts).

Malice means "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Barbre*, 402 Md. at 182 (internal quotation marks omitted). That motive "can exist even when 'the conduct is objectively reasonable.'" *Lee*, 384 Md. at 268. Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Cooper v. Rodriguez*, 443 Md. 680, 708 (2015) (internal quotation marks omitted). Whether conduct amounts to gross negligence "is usually a question for the jury." *Id.* at 708–09. In *Cooper*, a correctional officer's failure to follow his agency's own procedures, combined with his inaction during the resulting harm, supported a finding of gross negligence that stripped him of MTCA immunity. *Id.* at 710–13; *see also Barbre*, 402 Md. at 187–90 (allegations of gross negligence, viewed in the plaintiff's favor, sufficient to defeat MTCA immunity).

The Memorandum argues that the Second Amended Complaint contains only "the mere assertion that an act was done maliciously." Mem. at 10 (quoting *Green v. Brooks*, 125 Md. App. 349, 377 (1999)). In this Court, Rules 8 and 9(b) govern how malice is pleaded, *see Hanna v. Plumer*, 380 U.S. 460, 473–74 (1965), but the Second Amended Complaint satisfies *Green* as well,

which itself recognizes that malice "may be inferred from the surrounding circumstances." 125 Md. App. at 377. It alleges specific acts by each Defendant:

Deputy McQueen presented a writ he knew had been quashed as the basis for the eviction, SAC ¶¶ 40, 63, 118, 125, 134; executed the eviction fourteen days after the March 4 writ issued, before the notice periods under that writ could run, SAC ¶¶ 40, 125; delivered the March 6 posting citing the quashed writ, SAC ¶ 34; was told during the eviction that Washington had assured Plaintiff it would not occur, and continued, SAC ¶ 41; and did not ask whether the statutory notices had been given or refer the matter to the court as § 8B-3(a) requires, SAC ¶¶ 65, 85, 127.

Lieutenant Washington confirmed in writing that the writ was quashed and the listing removed, SAC ¶ 33; confirmed on March 9 that the writ "has been canceled," SAC ¶ 34; assured Plaintiff's representative by phone that he would not allow a March 18 eviction, SAC ¶ 37; knowing Plaintiff believed the eviction was cancelled, allowed it to proceed without correcting that belief, SAC ¶¶ 60, 62, 126; and, when asked to stop it, refused and stated that only a court order could stop it, contrary to § 8B-3(a), SAC ¶¶ 42, 65.

Ms. Holman confirmed that the March 18 eviction was cancelled, SAC ¶ 31; gave the private Defendants preferential scheduling through private email exchanges with their attorney, SAC ¶¶ 15, 50, 61; scheduled an eviction that could not satisfy the notice requirements, SAC ¶ 135; and, knowing Plaintiff believed it cancelled, let it proceed by surprise, SAC ¶¶ 60, 64, 128.

Plaintiff further alleges that these acts were taken to retaliate against him for his advocacy against the private Defendants and to help them use his seized property as leverage to force him to abandon his appeal, SAC ¶ 66, which Defendant Tessler then attempted, SAC ¶¶ 6, 100; and that the Sheriff's Office has since declined to file the post-eviction return and has refused public-records requests concerning the eviction. SAC ¶¶ 44, 68, 137, 154. A retaliatory purpose is malice under

*Barbre*, 402 Md. at 182. The failure to stop and refer the matter to the court is an intentional failure to perform the manifest duty § 8B-3(a) imposes, *see Cooper*, 443 Md. at 710–13, and both are pleaded with dates and quoted communications.

The Memorandum's statement that the allegations "conflict with the State court records," Mem. at 10, is unsupported for the reasons given in Part I.A: no attached order addresses what Deputy McQueen presented on March 18, what Plaintiff was told, whether notice was given, or motive, and the order quashing the January 23 writ supports the Second Amended Complaint. Plaintiff has also complied with the MTCA's notice requirement. SAC ¶ 52.

## V. The Arguments Adopted from Defendant Schleifer's Motion Do Not Warrant Dismissal.

The Sheriff Defendants adopt Sections II and III of Defendant Schleifer's memorandum, ECF No. 18-2 at 7–16, "as applicable." Mem. at 11. Most of that memorandum argues that the Second Amended Complaint alleges nothing Councilman Schleifer did, that Count XVI "does not even mention Councilman Schleifer by name," and that Schleifer is really sued in his official capacity. ECF No. 18-2 at 7, 9, 14, 15. Those arguments do not transfer to the Sheriff Defendants, whose conduct is alleged act by act, with dates, and who are sued in their individual capacities. SAC ¶¶ 14, 15, 17.

### A. Conspiracy (Counts XIII, XIV, and XVI).

Schleifer's memorandum states the governing standards: an underlying tort, ECF No. 18-2 at 7 (citing *Lilly v. Balt. Police Dep't*, 694 F. Supp. 3d 569, 592 (D. Md. 2023)); the agreement's "time, place, and the identity of the co-conspirators," and "what Defendant [] specifically did to carry the conspiracy into effect," *id.* at 8 (quoting *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 824 (D. Md. 2005)); and, under § 1983, facts that "reasonably lead to the inference

that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," *id.* (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). The Second Amended Complaint meets each requirement as to the Sheriff Defendants.

*Underlying torts.* Counts I through XII plead the substantive claims against each Sheriff Defendant, identifying each one's conduct and the resulting damages. SAC ¶¶ 5, 43, 54–137; *see* Parts I and IV above.

*Time, place, and participants.* The agreement is alleged to have been carried out between March 4 and March 18, 2026, through the Sheriff's Office's eviction-scheduling process and at 229 N. Monroe Street, between Defendants Holman, Washington, and McQueen and Defendants Tessler, Vertex, Schaffel, Shahbain, Alsamet, and Alnisafi, through the Holman–Tessler emails attached as Exhibit 7. SAC ¶¶ 31–43, 50, 57, 151.

*What each defendant did.* Paragraph 152 lists the overt acts: Holman's preferential scheduling; Holman's and Washington's assurances that the eviction was cancelled; proceeding although they knew Plaintiff believed it was cancelled; the coordinated arrival of Deputy McQueen and Defendant Tessler on March 18; and Washington's refusal to stop the eviction once underway. SAC ¶ 152; *see also* SAC ¶¶ 31, 33–34, 37, 39–42, 50.

*Mutual understanding.* An agreement may be inferred from circumstances. *Hinkle*, 81 F.3d at 421–22. The Second Amended Complaint alleges that Defendant Holman cancelled the March 18 eviction in writing; that Defendant Washington removed it from the public schedule and confirmed twice more that the writ was cancelled; and that Defendant McQueen then executed on that date with the private Defendants' representative present, on a writ the Sheriff's Office had recorded as quashed. SAC ¶¶ 31–42. An eviction cannot be executed with the purchaser's representative on site without communication between the Office and the purchaser; the Second

Amended Complaint alleges that communication occurred through the Holman–Tessler channel and was concealed from Plaintiff while he was told the opposite. SAC ¶¶ 50, 57, 151. Those facts "reasonably lead to the inference" of a mutual understanding, *Hinkle*, 81 F.3d at 421, unlike the complaint in the case Schleifer cites, which "neither describe[d] how the various Defendants conspired with one another nor allege[d] that they entered into an agreement or understanding." *Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 647–48 (D. Md. 2020); ECF No. 18-2 at 10–11. The intracorporate-conspiracy rule, ECF No. 18-2 at 8, has no application: the conspiracy alleged is between Sheriff's Office employees and private parties outside the Office. SAC ¶¶ 57, 151, 159.

**B. RICO (Counts XV and XVI).**

Schleifer's memorandum argues that Count XV fails because Plaintiff does not allege Schleifer's racketeering activity, a shared purpose implicating Schleifer, or an explicit agreement, and, quoting *Walters v. McMahen*, 795 F. Supp. 2d 350, 356 (D. Md. 2011), that the plaintiffs there "pled on information and belief alone." ECF No. 18-2 at 12. Neither point applies to the Sheriff Defendants. The Second Amended Complaint pleads each element of § 1962(c) as to them. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

*Distinct person and enterprise.* Each Sheriff Defendant is a "person" under 18 U.S.C. § 1961(3), and the enterprise alleged is an association in fact of the private Defendants, the Sheriff's Office personnel, Councilmember Schleifer, Sheriff Cogen, and others. SAC ¶¶ 162–63. That satisfies the distinctness requirement Schleifer's memorandum invokes, ECF No. 18-2 at 11: "a defendant may be both a person and a member of a collective RICO enterprise" without negating it. *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 589 (D. Md. 2014) (internal quotation marks omitted). An association-in-fact enterprise requires only a purpose, relationships among its

members, and longevity sufficient to pursue the purpose, *Boyle v. United States*, 556 U.S. 938, 946–48 (2009), and each is alleged: a common purpose of exploiting the tax-sale system for financial and political gain; the financial, political, and working relationships among the members; and operation across many tax-sale cases continuing to the present. SAC ¶¶ 163, 192–93.

*Conduct.* Liability under § 1962(c) extends to "lower rung participants in the enterprise who are under the direction of upper management." *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993). The Second Amended Complaint alleges the function each Sheriff Defendant performed: Holman scheduled the evictions through a private channel with the enterprise's attorney; McQueen carried them out; Washington supervised and provided the assurances that kept Plaintiff from acting. SAC ¶¶ 148, 152, 169–71.

*Pattern and predicate acts.* A pattern requires related predicate acts that amount to or threaten continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). First, in emails of March 4, 5, and 9, 2026 and telephone calls between March 9 and 18, Holman and Washington told Plaintiff the eviction was cancelled while it went forward, pleaded as wire fraud under 18 U.S.C. § 1343. SAC ¶¶ 31, 33–34, 37, 165, 170 & Ex. 8. Communications designed to lull a victim into inaction while a scheme is completed are in furtherance of the scheme. *United States v. Lane*, 474 U.S. 438, 451–53 (1986). Second, Holman scheduled evictions by email on writs issued to Vertex when it held no deed, also pleaded as wire fraud. SAC ¶¶ 50, 169 & Ex. 7. Third, on March 18 McQueen took the property under color of his office by presenting a quashed writ, and thereby aided and abetted the mail and wire fraud. SAC ¶¶ 171, 177–78. Obtaining property under color of office is extortion under Md. Code Ann., Crim. Law § 3-702, a felony that qualifies as racketeering activity under 18 U.S.C. § 1961(1)(A). SAC ¶ 176. Writs issued to Vertex without a deed, and eviction notices mailed on them, are alleged in six other tax-sale cases, SAC

¶¶ 46, 167–68, including one in which a Sheriff's Office-scheduled eviction on such a writ put the owner out before the writ was quashed, SAC ¶ 180; Holman scheduled the May 2025 eviction of Plaintiff on an earlier no-deed writ that was likewise quashed, SAC ¶ 31 n.1; and the personnel involved remain in place, SAC ¶ 193. Those allegations satisfy relatedness and continuity, *H.J. Inc.*, 492 U.S. at 240, 242–43, and the March 2026 predicates are pleaded from documents attached to the complaint, with the particularity Rule 9(b) requires.

*Injury and causation.* Plaintiff alleges injury to business and property, the loss of his store, inventory, equipment, and real property, caused directly by the acts alleged. SAC ¶¶ 5, 73, 194. He is the direct victim of the scheme, which satisfies the proximate-cause requirement *Walters* describes. 795 F. Supp. 2d at 356; ECF No. 18-2 at 12. A RICO plaintiff need not show first-party reliance on the misrepresentations, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649, 661 (2008), and in any event Plaintiff alleges that he did rely. SAC ¶ 38.

*Conspiracy (Count XVI).* Schleifer's memorandum, quoting *Walters* and *United States v. Pryba*, 900 F.2d 748, 760 (4th Cir. 1990), argues that a § 1962(d) claim requires facts showing each defendant's agreement. ECF No. 18-2 at 12. A defendant violates § 1962(d) by agreeing to facilitate a scheme that, if completed, would violate § 1962(c); the defendant need not personally commit a predicate act. *Salinas v. United States*, 522 U.S. 52, 63–65 (1997); *Pryba*, 900 F.2d at 760 ("There is no requirement that each conspirator personally commit illegal acts in furtherance of the conspiracy."). Each Sheriff Defendant's agreement is alleged through the coordinated conduct described above and in Part V.A. SAC ¶¶ 196–97.

### C. Group Pleading.

Schleifer's memorandum argues that the counts "attribute[] liability collectively to a group of defendants" without identifying what Schleifer did. ECF No. 18-2 at 13 (citing *SD3, LLC v.*

*Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015), and *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026)). A complaint must allege "particular facts against a particular defendant," *SD3*, 801 F.3d at 422, "particular enough to allow one to infer what each defendant did and knew," *Rice*, 172 F.4th at 432. The Second Amended Complaint does so for each Sheriff Defendant: SAC ¶¶ 14, 15, 17 (roles); ¶¶ 31, 50, 61, 128, 135, 152 (Holman); ¶¶ 33, 34, 37, 42, 62, 126, 152 (Washington); ¶¶ 34, 40, 41, 63, 125, 134, 152, 171, 177–78 (McQueen). Where the complaint refers to the "Sheriff's Office Defendants" collectively, it does so for conduct alleged against all three. SAC ¶¶ 64–65. The Memorandum itself summarizes "[t]he alleged roles of the Sheriff's employees" individually, Mem. at 3, which shows that each had notice of the conduct charged.

**D. "Shotgun Pleading."**

Schleifer's memorandum objects that each count incorporates the preceding paragraphs by reference and that Counts XIII through XVI do not identify which facts support which element. ECF No. 18-2 at 14 (citing *Baxter v. AmeriHome Mortg. Co.*, 617 F. Supp. 3d 346, 351 (D. Md. 2022)). *Baxter* rejected that objection: boilerplate incorporating all preceding paragraphs appears in "[n]early every complaint filed in this Court" and is not a shotgun pleading, which is one in which "it is virtually impossible to know which allegations of fact are intended to support which claims for relief." *Id.* at 351. Here, each count names the defendants against whom it is asserted, states the legal theory, and, for the Sheriff Defendants, identifies the specific acts on which it rests. *See, e.g.*, SAC ¶¶ 59–65 (Count I), 84–85 (Count III), 116–118 (Count X), 125–128 (Count XI), 134–135 (Count XII), 151–152 (Count XIII), 169–171, 177–178 (Count XV).

**E. Punitive Damages.**

Schleifer's memorandum argues that punitive damages are unavailable against a municipality or against officials sued in their official capacities, and that the word "malice" is

"conspicuously missing" from the Second Amended Complaint. ECF No. 18-2 at 15–16. The Sheriff Defendants are sued in their individual capacities. SAC ¶¶ 14, 15, 17. The Local Government Tort Claims Act's bar on punitive damages, Cts. & Jud. Proc. § 5-303(c)(1), protects the local government, not its employees. The Sheriff Defendants in any event describe themselves as State personnel, Mem. at 10, and the MTCA does not shield State personnel who act with malice. Cts. & Jud. Proc. § 5-522(b); Part IV above. Under § 1983, punitive damages are available against individual defendants whose conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Under Maryland law they require actual malice. *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 460 (1992). The Second Amended Complaint alleges malice by name and by facts as to each Sheriff Defendant. SAC ¶¶ 59, 61–66, 100.

## VI. Dismissal With Prejudice Would Be Improper.

The Sheriff Defendants ask that all claims be dismissed with prejudice and without leave to amend. Mem. at 12. Leave to amend must be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), and may be denied only for a reason such as bad faith, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Under the Court's schedule, ECF No. 52, Plaintiff is filing a renewed motion for leave to file a Third Amended Complaint that adds detail to the allegations against the Sheriff Defendants. If the Court finds any deficiency, it should permit that amendment. *See Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 628 (4th Cir. 2015).

## CONCLUSION

For the reasons stated, Plaintiff respectfully requests that the Court deny the Sheriff Defendants' Motion to Dismiss, ECF No. 27, in its entirety, or, if any claim is found deficient, dismiss without prejudice and permit the amendment described in Part VI.

Respectfully submitted,

Fausto Gomez
Plaintiff Pro Se
9315 Oak White Rd.
Nottingham, MD 21236
443-627-0201
FaustoGomez3080@hotmail.com

**CERTIFICATE OF SERVICE**

I certify the foregoing was filed with the Clerk of the Court and served on all counsel of record through the Court's CM/ECF system.

Fausto Gomez