**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FAUSTO GOMEZ
9315 Oak White Rd.
Nottingham, MD 21236

*Plaintiff,*

–v–

YISROEL ARYEH "ARI" SCHAFFEL
2814 Hanson Ave
Baltimore City, MD 21209

and

VERTEX TL LLC
C/O Registered Agents Inc
5000 Thayer Center, Ste C
Oakland, MD 21550

(Garrett County)

and

STEVEN TESSLER
2833 Smith Ave., #138
Baltimore City, MD 21209

and

EARL McQUEEN
Baltimore City Sheriff's Office
111 N. Calvert St.
Baltimore City, MD 21202

and

GLENDA HOLMAN
Baltimore City Sheriff's Office
100 N. Calvert St., Room 104
Baltimore City, MD 21202

and

XAVIER CONAWAY
Baltimore City Circuit Court Clerk
Elijah E. Cummings Courthouse, Room 412
111 North Calvert Street
Baltimore City, MD 21202

and

KENYATTA WASHINGTON
Baltimore City Sheriff's Office
111 N. Calvert St.

Civil Action No. 1:26-cv-01445-MJM

Baltimore City, MD 21202

and

MOHAMED DAHAN SHAHBAIN
4225 S Buckley Rd
Aurora, CO 80013

and

HADAF ANWAR ALSAMET
4225 S Buckley Rd
Aurora, CO 80013

and

MOHAMED ABDO ALNISAFI
4225 S Buckley Rd
Aurora, CO 80013

and

THE MAYOR AND CITY COUNCIL OF BALTIMORE
c/o Ebony Thompson, City Solicitor
Baltimore City Department of Law
City Hall, 100 N. Holliday Street
Baltimore, MD 21202

and

TESS LAW LLC
C/O Registered Agents Inc.
306 W. Redwood St., Ste 200
Baltimore City, MD 21201

*Defendants.*

**THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Fausto Gomez, pro se, files this Third Amended Complaint against the Defendants.

Plaintiff essentially alleges the Defendants executed a surprise eviction, without providing proper pre-eviction notice, which caused injuries to Plaintiff. Plaintiff states as follows:

## INTRODUCTION

1. Plaintiff Fausto Gomez was the lawful occupant and possessor of 229 N. Monroe Street, Baltimore, Maryland 21223 (“the Property”). He operated a deli and convenience store on the ground floor, maintained a residential apartment on the upper floor, and used the basement as a living space.

2. On March 18, 2026, employees of the Baltimore City Sheriff’s Office evicted Plaintiff from the Property at the direction of “the private Defendants”: Vertex TL LLC (the tax-sale investor); Yisroel Aryeh “Ari” Schaffel (its principal); Steven Tessler (attorney for Vertex TL LLC and for the buyers named below); Tess Law LLC (the law firm for which Defendant Tessler was employed at all relevant times); and Mohamed Dahan Shahbain, Hadaf Anwar Alsamet, and Mohamed Abdo Alnisafi (the individuals to whom the investor sold the Property before the eviction). The eviction dispossessed Plaintiff of the building, its contents, and his ability to operate his business.

3. The eviction was unlawful for at least three reasons. First, the eviction occurred without the notice required by Md. Code, Tax-Prop. § 14-836(b)(7). Second, the eviction occurred without the notice required by Baltimore City Code Article 13 § 8B-2. Third, the Defendants executed the eviction by displaying a writ of possession a judge had quashed, which impaired Plaintiff’s ability to challenge the notice failures in real time.

4. The eviction was also unlawful because it was carried out by surprise. Prior to the eviction, Sheriff’s Office personnel gave Plaintiff multiple assurances that no eviction would occur on March 18. They also removed the Property from the Sheriff’s Office’s official eviction website, which Baltimore residents rely on to track scheduled evictions. Plaintiff did not know the eviction would occur on March 18.

5. Because the eviction was a surprise, all of Plaintiff's personal and business property was still inside the building when the sheriff arrived. Plaintiff lost merchandise, cash, and refrigeration units. He lost furniture, electronics, and items of sentimental value. He lost personal documents, including tax returns bearing his Social Security number. He was also left exposed to liability for property inside the building that he did not own but was responsible for, including a point-of-sale system and an ATM.

6. When Plaintiff asked for his belongings back, Defendant Tessler, the private Defendants' attorney and employee of Tess Law, refused. Tessler stated he would return Plaintiff's property only if Plaintiff dismissed his pending appeal to reclaim title to the Property and waived all future legal claims relating to the Property.

7. As of August 3, 2026, the Sheriff's Office has not filed the legally required post-eviction paperwork with the Baltimore City Circuit Court. Plaintiff believes the paperwork has not been filed because the Sheriff's Office employees know the eviction was illegal and do not want a record of it in publicly accessible court files.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's federal civil-rights claims, and under 18 U.S.C. § 1964 over his civil RICO claims. The Court has supplemental jurisdiction over his related state-law and Maryland constitutional claims under 28 U.S.C. § 1367.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred here.

## THE PARTIES

10. Plaintiff Fausto Gomez is an individual who was the possessor and occupant of 229 N. Monroe Street, Baltimore, Maryland, where he operated his deli and convenience store and maintained a residential apartment.

11. Defendant Vertex TL LLC ("Vertex") is a private entity that acquires Baltimore City tax-sale certificates and pursues foreclosure and eviction of the affected property owners, including Plaintiff. Upon information and belief, Vertex employees receive bonuses for achieving quarterly or annual revenue targets. Upon information and belief, Defendants Schaffel, Tessler, Tess Law and Vertex all are part of the same organization aimed at pursuing tax sale foreclosures in Baltimore City, as described below.

12. Defendant Yisroel Aryeh "Ari" Schaffel is a principal and operator of Vertex. Upon information and belief, Defendant Schaffel directs the strategy and actions of Vertex and Defendant Tessler. Defendant Schaffel also identified himself as a clerk for Defendant Tessler on a September 15, 2026 call with Judge Maddox, Defendant Tessler, the attorney for the Sheriff's Office Defendants and Plaintiff.

13. Defendant Steven Tessler is the attorney for Vertex and for Defendants Shahbain, Alsamet, and Alnisafi, the individuals who bought the deed to the Property from Vertex. Tessler obtained a writ of possession for the Property from the Clerk's office and, together with the Sheriff's Office, executed the unlawful eviction without proper notice on behalf of his clients. Upon information and belief, Tessler is paid a percentage of Vertex's profits.

14. Defendant Tess Law LLC is the firm by which Defendant Tessler was employed and, on information and belief, is owned by Defendant Tessler (hence the name Tess Law). Defendant Schaffel is also a clerk for this firm.

15. Defendant Earl McQueen is a Deputy Sheriff of Baltimore City who physically executed the March 18, 2026 eviction. He delivered a notice to evict predicated on a quashed writ of possession on March 6, 2026 and presented a quashed writ of possession at the March 18 eviction as basis for the eviction. He is sued in his individual capacity.

16. Defendant Glenda Holman is an employee of the Baltimore City Sheriff's Office who served as Vertex's point of contact for scheduling evictions. She afforded Vertex preferential eviction scheduling, which aided it in scheduling and executing evictions before notice requirements were met. She is sued in her individual capacity.

17. Defendant Kenyatta Washington is a Lieutenant with the Baltimore City Sheriff's Office. He is Defendant McQueen's supervisor. Washington gave Plaintiff multiple assurances that the eviction would not take place on March 18 and refused to stop the eviction when it was underway, even though it was within his power per Baltimore City Code Article 13 § 8B-3. Washington is sued in his individual capacity.

18. Defendants Mohamed Dahan Shahbain, along with Defendants Alsamet and Alnisafi, purchased the deed for 229 N. Monroe from Vertex on December 3, 2025. They were represented by Defendant Tessler in pursuit of possession of the property and are represented by him in this action.

19. Defendant Hadaf Anwar Alsamet, along with two other Defendants, purchased the deed for 229 N. Monroe from Vertex on December 3, 2025.

20. Defendant Mohamed Abdo Alnisafi, along with two other Defendants, purchased the deed for 229 N. Monroe from Vertex on December 3, 2025.

**Maryland Tax-Sale Law and Baltimore City Code: Notice Requirements for Taking Possession**

21. In 2024, Defendant Vertex acquired a tax-sale certificate for 229 N. Monroe Street and on March 6, 2025 obtained a judgment foreclosing Plaintiff's right of redemption. Under Maryland and Baltimore City law, a judgment alone does not entitle a party to take possession of a property.

22. To take possession, a tax-sale foreclosure plaintiff like Vertex must first pay certain costs to the Baltimore City Department of Finance. Upon payment, the Department conveys a deed to the investor. Only then does the investor become entitled to a writ of possession.

23. With a writ in hand, the tax-sale investor must then provide the property owner with notice, in accordance with the law, before the writ may be executed.

24. Baltimore City Code Article 13 § 8B-2 states the tax-sale "foreclosure purchaser shall notify any occupant of the property of the date on which **the** writ of possession is first scheduled to be executed by the Sheriff." (emphasis added). That notice must be mailed at least 14 days before the scheduled eviction and posted on the property at least 7 days before. The notice must state the eviction date. Under § 8B-3, a sheriff is prohibited from executing a writ of possession if the sheriff "reasonably believes" that the notice requirements were not met.

25. Separately, Md. Code, Tax-Prop. § 14-836(b)(7) requires the tax-sale foreclosure plaintiff give at least 30 days' written notice before taking possession of property, stating "after issuance of the judgment foreclosing right of redemption and at least 30 days before taking possession of the property, the plaintiff shall give any tenant of the property written notice of the plaintiff's intention to obtain possession of the property and that the tenant must vacate the property within

30 days after the notice." The notice "shall also be posted on the property within 5 days of first being sent." (Md. Code Ann., Tax-Prop. § 14-836(b)(7)(iv))

26. These laws were broken to evict Plaintiff.

**The Eviction**

27. On December 3, 2025, Vertex obtained a deed to the Property. That same day, it conveyed the deed and title to Mohamed Dahan Shahbain, Hadaf Anwar Alsamet, and Mohamed Abdo Alnisafi.

28. Despite holding no deed, Vertex obtained a writ of possession, on its own behalf, from the Baltimore City Court Clerk's office on January 23, 2026, and used it to schedule an eviction for March 18, 2026.

29. On March 4, 2026, the Circuit Court quashed the writ because Vertex was not the deed holder. That same day, Plaintiff's representative emailed Defendants Holman, Washington, and the head of the Baltimore City Sheriff's Office, Sheriff Samuel Cogen, informing them the writ had been quashed and asking that the March 18 eviction be cancelled. Defendant Holman replied: "cancelled." **(Exhibit 1.)**[1]

30. Within an hour of being served the March 4, 2026 order quashing the writ, Defendant Tessler filed a new writ application, this time stating he was acting on behalf of the current deed holders (i.e., Defendants Shahbain, Alsamet and Alnisafi). The Clerk's office issued the new writ roughly 90 minutes later, at 4:17 PM on March 4.

[1] This was not the first instance Vertex obtained a writ for the Property, only to have it quashed and the eviction cancelled. Specifically, on May 4, 2025, Vertex applied for a writ of possession for the Property and the Clerk issued the writ the next day. On May 7, Defendants Tessler and Holman scheduled an eviction for May 28. On May 14, a deputy sheriff posted an eviction notice on the Property stating a May 28, 2025 eviction date. On May 23, the writ was quashed. The eviction was cancelled and no eviction occurred on May 28, 2025.

31. Defendant Tessler / Tess Law's March 4 writ application cited the deed acquired by Vertex (i.e. **not** the deed acquired by Shahbain, Alsamet and Alnisafi) and the comment field in Marlyand's Electronic Document Submission tool for the accompanying exhibit read "JUDGEMENT AWARDING POSSESSION" despite the exhibit actually being Vertex's Judgement Foreclosing the Right of Redemption.

32. On March 4, Plaintiff's representative emailed Defendants Washington and Holman and Sheriff Cogen asking whether the newly issued writ would affect the eviction schedule. They did not respond. The next day, Plaintiff's representative noticed the eviction still appeared on the Sheriff's Office website and sent another email: "Yesterday you cancelled the March 18 eviction. However, according [to] the Baltimore City Sheriff website, the eviction is still scheduled for March 18. May you please advise on if the eviction is cancelled or scheduled?" Defendant Washington replied: "our system was updated showing the warrant was quashed. I recommend refreshing the browser then selecting it again. For some reason if you don't see it removed please call me direct." Within the hour, the eviction was removed from the website. **(Exhibit 1.)**

33. On March 6, Defendant McQueen arrived at the Property and delivered a written eviction notice which was based on the January 23 writ that the court had already quashed. **(Exhibit 2)**. Plaintiff's representative again emailed Defendants Washington, Holman and Sheriff Cogen inquiring about the meaning of the delivered notice. On March 9, Washington replied: "that posting had already been assigned to the deputy's workload but yes that Writ of Possession has been canceled. We apologize for any confusion this may have caused." **(Exhibit 1.)**

34. On March 9, Plaintiff received a letter from Defendant Tessler stating that his "clients" intended to take possession of the Property. Tessler's letter did not state which clients he was referring to i.e. whether it was the Alsamet, Shahbain & Alsamet; Vertex or all of them. The

letter was postmarked March 6, only twelve days before the March 18 eviction. The letter was mailed short of the fourteen days' notice required by Baltimore City Code Article 13 § 8B-2 and short of the thirty days' notice required by Md. Code, Tax-Prop. § 14-836(b)(7). The letter also failed to state the eviction date. **(Exhibit 3)**

35. On information and belief, Defendants Vertex, Shahbain, Alsamet, and Alnisafi each authorized Defendants Tessler and Tess Law to obtain possession of the Property on their behalf on March 18, 2026, and Tessler and Tess Law acted as their agents in doing so. This is shown by the following facts. First, Vertex's December 3, 2025 sale of the Property to Shahbain, Alsamet, and Alnisafi was conditioned on a Vertex pursuing possession of the property on behalf of the purchasers; Defendant Tessler stated so on the record in the Baltimore City Circuit Court. Second, Tessler and Tess Law represented Vertex, Shahbain, Alsamet, and Alnisafi simultaneously in that court, filing motions on behalf of all four. Third, within an hour of the Vertex's January 23 writ being quashed, Tessler filed a new writ application in the names of Shahbain, Alsamet, and Alnisafi, and that application relied on the deed Vertex had held rather than the deed his named clients held. Fourth, Tessler's March 6 letter stated that "his clients" intended to take possession of the Property without identifying whether those clients were Vertex, the buyers, or both. Fifth, Tessler acknowledged on the record in the Baltimore City Circuit Court that he was acting as agent for Shahbain, Alsamet, and Alnisafi. Each of these Defendants stood to benefit from possession being taken on March 18: Vertex by retaining the $190,000 purchase price, and Shahbain, Alsamet, and Alnisafi by obtaining possession of the Property they had paid for.

36. The only eviction-related papers Plaintiff received leading up to the March 18 eviction were Tessler's letter postmarked on March 6 and the notice McQueen delivered the same day,

which referred to the quashed January 23 writ of possession which had been quashed and for which Washington commented “Good morning that posting had already been assigned to the deputy's workload but yes that Writ of Possession has been canceled. We apologize for any confusion this may have caused.”

37. Between March 9 and March 18, Defendant Washington gave Plaintiff’s representative additional assurances by phone that the eviction would not proceed on March 18. He stated that his office controlled the scheduling and that he would not allow a March 18 eviction to happen.

38. Plaintiff relied on the Sheriff’s Office employees’ emails and assurances and was convinced no eviction would occur on March 18.

39. On March 18, 2026, the Sheriff’s Office executed the eviction anyway. Defendant McQueen arrived in uniform and armed. **(Exhibit 4).** A representative of the private entity taking possession was present; upon information and belief, that representative was Defendant Tessler.

40. Defendant McQueen presented Plaintiff with the quashed January 23 writ as the purported legal basis for the eviction. **(Exhibit 5).** Upon information and belief, that choice was not an accident. Proceeding under the March 4 writ would have exposed the notice violations on the face of the documents. A sheriff is legally prohibited from executing a writ of possession when the sheriff "reasonably believes" the notice requirements have not been met. (Baltimore City Code Art. 13 § 8B-3.) The March 4 writ issued at 4:17 PM. Maryland Rule 1-203(a) governs the computation of any period of time prescribed by rule, court order, or statute, and provides that "the day of the act, event, or default after which the designated period of time begins to run is not included," and that where the period exceeds seven days, intermediate Saturdays, Sundays, and holidays are counted. Applying Rule 1-203(a), and treating the writ's

issuance as the earliest possible start of the notice period, March 4 is excluded, March 5 is day one, and March 18 is day fourteen. The fourteen days' notice required by Baltimore City Code Art. 13 § 8B-2 therefore did not expire until the end of March 18, and the earliest date on which the March 4 writ could lawfully have been executed under § 8B-2 was March 19. The thirty days' notice required by Md. Code, Tax-Prop. § 14-836(b)(7) could not have expired before April 3. A March 18 eviction under the March 4 writ was therefore impossible to reconcile with either notice requirement. By using the quashed January 23 writ instead, McQueen could carry out the eviction and later claim he did not know the notice requirements had not been met.

41. While the eviction was underway, Plaintiff called his representative and then handed the phone to Defendant McQueen. Plaintiff's representative told Defendant McQueen the eviction was a mistake and that Defendant Washington had assured them it would not take place on March 18. Defendant McQueen stated Defendant Washington was aware of the eviction, and that Defendant McQueen would stop the eviction upon orders from Defendant Washington.

42. Plaintiff's representative then called Defendant Washington and asked him to reschedule the eviction. Washington refused, stating he could not intervene because Deputy McQueen and the private Defendants' representative were already on site. Washington stated he could stop the eviction only upon a court order, which Plaintiff could not possibly have obtained in time because the eviction was already underway.

43. The eviction was a surprise. Because the Sheriff's office Defendants convinced Plaintiff the eviction was cancelled, no Defendant ever provided the legally required notice or provided an official eviction date, Plaintiff had no opportunity to remove his belongings from the Property before they were seized.

44. As of August 3, 2026, the Sheriff's Office had still not filed the required post-eviction paperwork with the Baltimore City Circuit Court. Upon information and belief, the Sheriff's Office has not filed the paperwork because its employees know the eviction was unlawful and do not want it memorialized in publicly accessible court records.

45. On the date of the eviction, the only plaintiff in the case was Vertex. Leading up to the eviction, Defendant Tessler was filing motions in the trial court on behalf of the Shahbain, Alsamet & Alnisafi & Vertex. On the trial court record, Defendant Tessler said obtaining a writ of possession was a condition of the December 3 sale of the property from Vertex to Shahbain, Alsamet & Alnisafi.

46. Therefore Vertex, Tessler, Tess Law, Shahbain, Alsamet & Alnisafi all shared the common objective of taking possession of the property and all entrusted Defendant Tessler, through Tess Law, as their agent.

**The Baltimore City Sheriff's Offices' Eviction Policies and Governor Wes Moore's Anti-Corruption Executive Orders**

47. Even under the assumptions most favorable to Defendants, the earliest lawful eviction date was March 19, 2026. Maryland Rule 1-203(a) governs the computation of any period of time prescribed by rule, court order, or statute, and provides that "the day of the act, event, or default after which the designated period of time begins to run is not included," and that where the period exceeds seven days, intermediate Saturdays, Sundays, and holidays are counted. The writ on which Defendants now rely issued at 4:17 PM on March 4, 2026. Treating that issuance as the earliest possible start of the fourteen-day notice period required by Baltimore City Code Art. 13 § 8B-2, March 4 is excluded, March 5 is day one, and March 18 is day fourteen. Fourteen full days' notice therefore did not expire until the end of March 18, and the first day on which an

eviction could lawfully have occurred was March 19. This is precisely how the Sheriff's Office's own Legal Advisor described the agency's practice: evictions are scheduled "on the first lawful day – 15 days out," and never "within 14 days." A March 18 eviction was, by the Sheriff's Office's own math, one day early — and that is before accounting for the fact that no notice was actually sent until March 6.

48. In a YouTube interview with Midfield Real Estate, Sheriff Sam Cogen and Sheriff's Office Legal Advisor Nicholas Blendy discussed eviction practices. They did not specifically address tax sale foreclosure evictions, which are less frequent than other types of evictions like failure-to-pay rent. But Blendy's comments about evictions generally are instructive. Although not all types of evictions legally require 14 days' notice, Blendy explained that the Sheriff's Office treats 14 days as a minimum for the sake of consistency: the "Sheriff's department prefers uniformity with notice," and "[w]e've actually scheduled some [evictions] on the first lawful day – 15 days out… We're not giving you a date within 14 days...."

49. The Sheriff's Office's own published materials state that at a warrant of restitution[2] eviction, "[t]he Sheriff's Office representative will verify that the landlord provided sufficient notice to tenants. Tenants may challenge whether the appropriate notices were properly sent." In Plaintiff's case, the Sheriff's Office employees knew the eviction was a surprise to Plaintiff but did not stop it. And they never asked Plaintiff if he received proper notice.

50. The Maryland Judiciary's Warrant of Restitution form state that notice failures are meant to be raised. The current form (DC-CV-081, Rev. 07/01/2026) tells Baltimore City tenants that

---

[2] A warrant of restitution is the court order directing the Sheriff to execute an eviction in a landlord-tenant case. A writ of possession is its counterpart that enforces a judgment awarding possession of real property, as in mortgage and tax-sale foreclosure cases. Both direct the Sheriff's Office to remove a property's occupants and deliver possession.

the landlord must give notice of the first scheduled eviction date in two ways, by first-class mail at least 14 days before the eviction and by posting on the premises at least 7 days before, and then states: “If you or the sheriff believe the notices were not properly provided, the sheriff may refer the issue to a judge to decide.” The form continues: “If the judge determines that the landlord did not give proper notice, the eviction will be vacated/cancelled,” and if the judge determines proper notice was given, “the sheriff will execute the eviction immediately.”

51. The earlier version of the form, in use at the time of the events in Todman v. Mayor & City Council of Baltimore, 104 F.4th 479 (4th Cir. 2024), contained a “BALTIMORE CITY ONLY — IMPORTANT NOTICE TO DEFENDANTS” stating that the landlord “must provide notice to the tenant of the first scheduled eviction date in two separate ways,” that “[t]he tenant may challenge whether the notices were properly given,” and that “[o]n eviction day any personal property left in or around the rental unit is considered abandoned” and “[t]he tenant has no right to the property.”

52. The Sheriff’s Office therefore has had an established procedure for a notice dispute at the door: pause the eviction and refer the question to a judge. That procedure was available on March 18, 2026. While the eviction was underway, Plaintiff’s representative told Defendants McQueen and Washington the eviction was a mistake and had been cancelled. Neither asked whether Plaintiff had received the notices required by Baltimore City Code Art. 13 § 8B-2 or Md. Code, Tax-Prop. § 14-836(b)(7), and neither referred the question to a judge. Instead, Defendant Washington said he could not stop the eviction without a court order. Because property left in the building was treated as abandoned the moment the writ was executed, skipping that procedure took away the only chance Plaintiff had to contest the eviction before he lost everything inside.

53. Defendant Holman provided preferential scheduling for the private Defendants, as evidenced by private emails between her and Defendant Tessler. **(Exhibit 6.)** Holman's special treatment helped the private Defendants schedule and execute evictions before notice requirements were met, including Plaintiff's March 18 eviction. Her preferential treatment for Vertex was in direct violation of COMAR 01.01.2023.01F which states, "Employees shall act impartially in all their affairs and shall not give preferential treatment to any private organization or individual."

54. The Sheriff's Office's practice, as described by its own Legal Advisor, is to schedule evictions no earlier than the first lawful day. Its published materials and the Warrant of Restitution form state that it will verify notice and refer notice disputes to a judge. COMAR 01.01.2023.01F requires its employees to schedule evictions impartially. In Plaintiff's case the Sheriff's Office Defendants did not follow these policies: they scheduled the eviction inside the notice period, did not verify notice, did not refer the notice dispute to a judge, and coordinated the eviction with Defendant Tessler and his clients while telling Plaintiff it was cancelled. Each of these departures benefited the private Defendants by allowing them to take possession before Plaintiff could remove his property. By departing from the Office's eviction policies for the private Defendants' benefit, the Sheriff's Office Defendants violated Executive Order 01.01.2023.01, "Standards of Conduct for Executive Branch Employees," the first executive order Governor Wes Moore issued upon taking office, now codified at COMAR 01.01.2023.01. The order reqstates that "[t]he citizens of Maryland deserve a Government where State business is conducted truthfully and honestly, free of the existence or the perception of any corruption or misconduct," and prohibits employees from giving "preferential treatment to any private organization or individual."

**Plaintiff's Litigation in the State of Maryland Court System**

55. Plaintiff is party to three related cases in the State of Maryland Court System. One is the case where Vertex pursued and obtained a Judgement Foreclosing the Right of Redemption. (Case No. C-24-CV-24-004451). One is an appeal related to that case. (Case No. ACM-REG-1791-2025) And one is an appeal of the Baltimore City Circuit Court denying a motion to quash the writ of possession issued to Shahbain, Alsamet and Alnisaifi and a related denial of a Maryland Rule 2-534 motion. (Case No. ACM-REG-0512-2026)

56. No case at the state level raises the claims in this Complaint. Explicitly, Plaintiff's complaint in this court has claims arising from lack of proper notice related to the March 18, 2026 being a surprise. The notice failures and injuries arising from the surprise eviction have not been raised in state court.

**Statement of Compliance with Maryland Statutes**

57. Plaintiff has complied with the Maryland Tort Claims Act and the Local Government Tort Claims Act, having mailed the required notice letters on June 9, 2026.

58. Plaintiff asserts that damages for all counts exceed $75,000, in an amount to be determined at trial, making Plaintiff compliant with Maryland Rule 2-305.

**COUNT I**
**UNREASONABLE SEIZURE OF PROPERTY**
*42 U.S.C. § 1983 — Fourth Amendment*
**(Against Defendants McQueen, Holman, Washington, Vertex, Schaffel, Tessler, Tess Law LLC, Shahbain, Alsamet and Alnisafi)**

59. The allegations set forth in all previous paragraphs are incorporated herein by reference.

60. Plaintiff had protected property interests in the real property at 229 N. Monroe Street, in the deli and convenience store business he operated there, and in the personal and business property within the building.

61. The March 18, 2026 eviction was a seizure of that property under color of law.

62. The private Defendants (Vertex, Tess Law, Schaffel, Tessler, Shahbain, Alsamet and Alnisafi) acted under color of state law by organizing the unlawful eviction with State officials, namely the Sheriff's Office Defendants (Washington, Holman and McQueen). While the Sheriff's Office assured Plaintiff the eviction was cancelled, the private Defendants and the Sheriff's Office planned the eviction behind Plaintiff's back. Their coordination is evidenced by, among other things, the coordinated arrival of the private Defendants' agent, Defendant Tessler, and Defendant McQueen at the eviction.

63. The seizure was unreasonable. Plaintiff did not receive the notice required by Md. Code, Tax-Prop. § 14-836(b)(7); Plaintiff did not receive the notice required by Article 13 § 8B-2 of the Baltimore City Code; the eviction was scheduled on a January 23 writ of possession the Clerk issued when Vertex held no deed and which was quashed on March 4; a quashed writ of possession was presented at the eviction as the purported basis for the eviction; and the eviction came as a surprise because the Sheriff's Office employees told Plaintiff the eviction would not take place on that day. As professional tax-sale investors, court officers, and law enforcement, every Defendant knew or should have known that carrying out an eviction under these conditions violated Plaintiff's constitutional and statutory property rights.

64. Upon information and belief, the Sheriff's Office personnel who scheduled and executed the eviction acted with malice or gross negligence and without reasonableness as described below.

65. Defendants Washington and Holman, as well as Baltimore City Sheriff Samuel Cogen, knew Plaintiff believed the eviction had been cancelled. This Washington and Holman told Plaintiff the March 18 eviction was cancelled, and Sheriff Cogen was also on the email chain. Any one of them could have corrected that belief before March 18, including the day before. Instead, they chose to evict Plaintiff by surprise. Defendant Tessler then used that property as leverage to pressure Plaintiff into dropping his appeal in the Appellate Court of Maryland, where Plaintiff is seeking to recover title to the Property.

66. Defendant Holman acted with malice or gross negligence by affording Vertex preferential eviction scheduling, in clear violation of State law including COMAR 01.01.2023.01F.

67. Defendant Washington acted with malice or gross negligence by repeatedly assuring Plaintiff the eviction would not happen on March 18, then allowing it to proceed anyway, and refusing to reschedule it when it was underway, despite having the statutory authority to do so.

68. Defendant McQueen acted with malice or gross negligence by presenting a quashed writ of possession to Plaintiff as justification for the eviction.

69. Defendants McQueen & Washington acted with malice or gross negligence by not referring the eviction to a judge when it became apparent Plaintiff was surprised by the eviction i.e. that it was likely proper notice was not given.

70. The Sheriff's Office Defendants acted with malice or gross negligence by removing the eviction listing from the official public website that Baltimore City residents rely on to know when evictions will occur, then proceeding with the eviction anyway. On information and belief, the removal from the website was under the direction or execution of Defendant Washington, since it was removed shortly after he replied to an email saying it should no longer be there.

71. The Sheriff's Office Defendants acted with malice or gross negligence by executing the eviction on March 18, on information and belief, in violation of their own internal policies which are to not schedule evictions until 14 days after a writ of possession or warrant of restitution has been issued, with the clock starting the day after the writ or warrant has been issued.

72. The Sheriff's Office Defendants acted with malice or gross negligence by violating Baltimore City Code Article 13 § 8B-3(a) which requires them not to execute a writ of possession if they reasonably believe the City's notice requirements have not been met. Days before executing the eviction Defendant Washington told Plaintiff's representative the eviction would not take place on March 18. On March 18, McQueen said he would stop the eviction if Washington so ordered. Washington was called and said he could not stop the eviction without a court order, despite the text of § 8B-3(a) which states an eviction can be halted of there is reasonable belief the notice requirements were not met. To a reasonable officer the above would trigger that belief. And it is departmental policy for the Baltimore City Sheriff's Office to investigate if notice was proper for warrant of restitution evictions.

73. Upon information and belief, the Sheriff's Office Defendants executed the eviction in the manner most damaging to Plaintiff not out of legal necessity, but for two reasons: to retaliate against him for his advocacy against the private Defendants, and to help the private Defendants use his personal and business property as leverage to force him to drop his legal claims related to

the Property, including his pending appeal to recover title. Additionally, on information and belief, Defendant Tessler lives in Illinois. The Sheriff's Office Defendants may have accommodated the premature eviction so that Defendant Tessler would not have to change his travel schedule.

74. The retaliatory and ill-willed character of the eviction is consistent with a documented culture within the Sheriff's Office. The Sheriff's own union, the Fraternal Order of Police, has stated that retaliation is a significant part of the Office's culture under Baltimore City Sheriff Samuel Cogen. Sheriff Cogen is currently a defendant in three other lawsuits alleging that he abused his office in a malicious and retaliatory manner.

75. Upon information and belief, based on the preferential treatment the private Defendants received, there was improper motive. The Sheriff's Office has denied MPIA requests for communications related to Plaintiff's eviction; those records could provide concrete evidence of motive and will be sought in discovery.

76. Defendant Tessler is liable as the private Defendants' agent who directly participated in carrying out the unlawful eviction.

77. Defendant Tess Law is liable as the firm under which Defendant Tessler was operating.

78. On information and belief, Defendant Schaffel directed Defendant Tessler to apply for the January 23, 2026 writ in Vertex's name and to schedule the March 18, 2026 eviction on it. Schaffel is Vertex's principal and operator and its decision-maker for the Property; he works as a clerk for Tessler and Tess Law, the firm that prepared and filed the writ applications; and he visited the Property before the eviction.

79. Defendants Shahbain, Alsamet and Alnisafi are liable because, on information and belief, the unlawful property seizure was carried out with their knowledge and on their behalf, as shown by Defendant Tessler's acknowledgment in Baltimore City Circuit Court that he was acting as their agent.

80. As a direct result, Plaintiff lost his real property, his deli and convenience store business, and his chattels, and he suffered economic harm and severe emotional distress.

81. The private Defendants (Vertex, Schaffel, Tessler, Tess Law, Shahbain, Alsamet and Alnisafi) are liable as state actors because they invoked the State's processes to violate Plaintiff's rights.

**COUNT II**
**UNREASONABLE SEIZURE OF PROPERTY**
*Maryland Constitutional Tort — Declaration of Rights, Articles 19 and 26*
**(Against Defendants McQueen, Holman, and Washington)**

82. The allegations set forth in all previous paragraphs are incorporated herein by reference.

83. Article 26 of the Maryland Declaration of Rights prohibits unreasonable seizures. Article 19 guarantees a remedy for injuries to person or property. Maryland recognizes a direct cause of action for damages arising from violations of the Declaration of Rights.

84. The seizure of Plaintiff's property as described herein was unreasonable for the same reasons set forth in Count I, and violated Article 26, entitling Plaintiff to damages under Article 19.

**COUNT III**
**DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW**
*42 U.S.C. § 1983 — Fourteenth Amendment*

**(Against Defendants The Mayor and City Council of Baltimore, McQueen, Holman, Washington, Vertex, Schaffel, Tessler, Tess Law LLC, Shahbain, Alsamet and Alnisafi)**

85. The allegations set forth in all previous paragraphs are incorporated herein by reference.

86. Defendants Holman & Washington denied Plaintiff due process by concealing the true eviction date from Plaintiff.

87. Defendant McQueen denied Plaintiff due process by presenting Plaintiff a quashed writ of possession as the basis for the eviction, inhibiting Plaintiff's opportunity to raise notice failures in the heat of the moment.

88. Plaintiff's due process rights were violated because he was never given the opportunity to challenge the eviction on the ground that Defendants failed to comply with the statutory pre-eviction notice requirements. The Sheriff's Office's own published materials state that at a warrant of restitution eviction, "[t]he Sheriff's Office representative will verify that the landlord provided sufficient notice to tenants. Tenants may challenge whether the appropriate notices were properly sent." In Plaintiff's case, the Sheriff's Office employees knew the eviction was a surprise to Plaintiff but did not stop it. And they never asked Plaintiff if he received proper notice.

89. Lack of any opportunity to challenge notice failures together deprived Plaintiff, and similarly situated property owners, of their property without due process of law.

90. The private Defendants (Vertex, Schaffel, Tessler, Tess Law, Shahbain, Alsamet and Alnisafi) are liable as state actors because they invoked the State's processes to violate Plaintiff's Fourteenth Amendment rights. They executed the eviction through the Sheriff's Office before satisfying the mandatory pre-eviction notice requirements.

91. In the alternative, if the Court finds that § 8B-3's notice-verification requirement is not applicable here, the Mayor and City Council of Baltimore is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for violating Plaintiff's procedural due process rights under the Fourteenth Amendment, because the City's own ordinance is what deprived Plaintiff of notice and an opportunity to be heard before his property was deemed abandoned and seized.

92. Baltimore City Code Article 13 § 8B, governing tax-sale foreclosure evictions, deems an occupant's personal property abandoned upon execution of a writ of possession without requiring that the occupant receive meaningful notice that abandonment is imminent or any opportunity to reclaim the property afterward. The Fourth Circuit held the City liable for the same defect in *Todman v. Mayor & City Council of Baltimore*, 104 F.4th 479, 488–95 (4th Cir. 2024), where the City's Abandonment Ordinance deemed an evictee's belongings abandoned upon eviction without adequate notice or any reclamation period. As in *Todman*, the City's policy, embodied in its ordinance, stripped Plaintiff of his belongings the moment the writ was executed, with no reclamation period and no pre- or post-deprivation process to contest the presumption of abandonment. Because the ordinance itself "directly commands or authorizes constitutional violations," the causal link between the City's policy and Plaintiff's injury "is manifest and does not require independent proof." *Id.* at 495 (citing *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)).

93. To the extent the City has not corrected or modified its ordinance in light of *Todman,* and instead relies on an agreement with the Baltimore City Sheriff's Office that the Sheriff's Office will ensure proper notice, the City is liable under *Monell* since the Sheriff's Office policies are operating as the City's policies.

**COUNT IV**
**DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS**
*Maryland Constitutional Tort — Declaration of Rights, Articles 19 and 24*
**(Against Defendants McQueen, Holman, and Washington)**

94. The allegations set forth in all previous paragraphs are incorporated herein by reference.

95. Article 24 of the Maryland Declaration of Rights guarantees that no person shall be deprived of property except by due process of the law of the land. Article 19 guarantees every person a remedy for injuries to their person or property. For the reasons stated in Count III, Defendants deprived Plaintiff of his property in violation of Article 24, entitling Plaintiff to damages under Article 19.

**COUNT V**
**TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS**
*Maryland Common Law*
**(Against Defendants McQueen, Holman, Washington, Vertex, Schaffel, Tessler, Tess Law LLC, Shahbain, Alsamet and Alnisafi)**

96. The allegations set forth in all previous paragraphs are incorporated herein by reference.

97. Plaintiff operated a going-concern deli and convenience store at 229 N. Monroe Street with a regular customer base and established vendor relationships. Those relationships had economic value.

98. The private Defendants knew Plaintiff operated a deli and convenience store at the Property. That the Property housed an active business was evident from the underlying tax-sale foreclosure litigation and from a cursory visual inspection: the awning reads “Deli & Grocery.” Defendant McQueen and Defendant Schaffel had each visited the Property before the eviction.

99. Upon information and belief, the private and Sheriff’s Office Defendants knew that Plaintiff, like any deli and convenience store owner, depended on vendor relationships and

customer sales to operate his business. Upon information and belief, they sought to destroy those relationships, to harm Plaintiff financially and to weaken his ability to fund his litigation pending in the Appellate Court of Maryland where he seeks to recover title to the Property.[3]

100. Their actions did cause harm. For example, Plaintiff has a lien judgement against him by the Maryland Lottery Commission, because the lottery-related property was seized during the eviction and Plaintiff cannot access it to return it (Case No. C-03-JG-26-013016).

101. Before the eviction, Plaintiff was actively exploring a move to a nearby location at 200 N. Monroe Street. Had Defendants provided the legally required notice, he could have relocated, preserved his vendor and customer relationships, and limited his losses. But because the eviction came without warning, he had none of those opportunities.

102. The damage is not undone by restoration. Even if Plaintiff were restored to the Property tomorrow, he would have to rebuild his customer base and repair his standing with vendors who once regarded him as a reliable partner. One vendor, whose point-of-sale system remains locked inside the building, has already threatened to fine him for failure to return the equipment he cannot reach.

103. The unlawful interference caused Plaintiff substantial damages.

104. All Defendants named in this count are liable because they jointly caused the tortious interference to occur.

**COUNT VI**
**CONVERSION**
*Maryland Common Law*

[3] Defendants succeeded in weakening Plaintiff's ability to fund his appeal to recover title. Plaintiff cannot afford counsel for oral argument at the appeal hearing and intends to proceed pro se.

**(Against Defendants McQueen, Holman, Washington, Vertex, Schaffel, Tessler, Tess Law LLC, Shahbain, Alsamet and Alnisafi)**

105. The allegations set forth in all previous paragraphs are incorporated herein by reference.

106. Plaintiff owned and possessed business-related and personal property inside 229 N. Monroe Street and on the day of the eviction was operating his business as usual. The surprise eviction dispossessed Plaintiff of his property and placed it within Defendants' control.

107. Defendant Tessler expressly conditioned the return of Plaintiff's personal and business property on Plaintiff waiving all future legal claims. Defendants acted maliciously, willfully, and with reckless disregard for Plaintiff's rights, intending to punish Plaintiff for exercising those rights and to leverage his property as a means of coercing Plaintiff to abandon his legal claims.

108. By retaining Plaintiff's belongings without legal justification, Defendants engaged in conversion of Plaintiff's property.

109. All Defendants named in this count are liable because they jointly caused the conversion to occur.

**COUNT VII**
**TRESPASS TO CHATTELS**
*Maryland Common Law*
**(Against Defendants McQueen, Holman, Washington, Vertex, Schaffel, Tessler, Tess Law LLC, Shahbain, Alsamet and Alnisafi)**

110. The allegations set forth in all previous paragraphs are incorporated herein by reference.

111. Plaintiff owned perishable goods consistent with operating a deli and convenience store, as well as household and business property. By dispossessing Plaintiff without notice and taking control of the building's contents, Defendants intentionally interfered with that property. As a result, Plaintiff's property spoiled, was lost, or was stolen.

112. All Defendants named in this count are liable because they jointly caused the trespass to chattels to occur.

**COUNT VIII**

**TRESPASS TO LAND**

*Maryland Common Law*

**(Against Defendants McQueen, Holman, Washington, Vertex, Schaffel, Tessler, Tess Law LLC, Shahbain, Alsamet and Alnisafi)**

113. The allegations set forth in all previous paragraphs are incorporated herein by reference.

114. On March 18, 2026, Plaintiff was in actual and exclusive possession of 229 N. Monroe Street. He operated his deli and convenience store on the ground floor and maintained a residential apartment on the top floor, and a living space in the basement.

115. On March 18, 2026, Defendant McQueen, and on information and belief Defendant Tessler, physically entered the Property without Plaintiff's consent. Defendants Holman and Washington scheduled and authorized that entry. Defendants Vertex, Schaffel, Tessler, Tess Law, Shahbain, Alsamet and Alnisafi requested, directed and/or caused the entry.

116. The entry was not authorized by law. The writ presented to Plaintiff at the door, the January 23, 2026 writ, had been quashed by the Circuit Court on March 4, 2026. The March 4, 2026 writ could not lawfully be executed on March 18, 2026 because the notice required by Md. Code, Tax-Prop. § 14-836(b)(7) and Baltimore City Code Art. 13 § 8B-2 had not been given, and Baltimore City Code Art. 13 § 8B-3(a) prohibits the sheriff from executing a writ of possession when the sheriff reasonably believes the notice requirements have not been met. No lawful writ authorized entry onto the Property on March 18, 2026.

117. Defendants entered, and caused entry onto, the Property intentionally. The entry was not accidental – they scheduled it to have a coordinated arrival between Defendant McQueen and Defendant Tessler.

118. The unauthorized entry dispossessed Plaintiff of the Property, ended his business operations and residence there, and resulted in the seizure of everything inside the building. Plaintiff suffered damages as a result.

119. All Defendants named in this count are liable because they jointly caused the trespass to land to occur.

**COUNT IX**
**UNJUST ENRICHMENT**
*Maryland Common Law*
**(Against Defendants Vertex, Schaffel, Tessler & Tess Law, or, in the alternative, against Defendants Tessler, Tess Law, Shahbain, Alsamet, and Alnisafi)**

120. The allegations set forth in all previous paragraphs are incorporated herein by reference.

121. Through the March 18, 2026 eviction, Defendants Vertex, Schaffel, Tessler, and Tess Law took possession of Plaintiff's real property and of all property inside it. In the alternative, Defendants Shahbain, Alsamet, Alnisafi, Tessler, and Tess Law took possession of Plaintiff's real property and all property inside it.

122. Defendants obtained a concrete benefit at Plaintiff's expense: premature possession of the real property and the value of everything inside it. They also caused the cessation of Plaintiff's income which caused him to abandon his attorney who was defending him in state court. The surprise eviction was carried out on an ordinary business day while Plaintiff was operating normally, ensuring the property and its contents would be there for the taking. Defendants knew and appreciated that benefit.

123. Defendants have retained that benefit under circumstances that make keeping it inequitable. They gave Plaintiff nothing in return and have conditioned the return of his seized personal and business property on his waiving all legal claims relating to the property.

124. It would be unjust to allow Defendants to retain that benefit without compensating Plaintiff.

**COUNT X**
**COMMON LAW FRAUD**
*Maryland Common Law*
**(Against Defendants McQueen, Holman, Washington, Vertex, Schaffel, Tessler, Tess Law LLC, Shahbain, Alsamet and Alnisafi)**

125. The allegations set forth in all previous paragraphs are incorporated herein by reference.

126. Defendants Holman and Washington misled Plaintiff into believing the eviction would not occur on March 18, 2026, through repeated assurances to that effect.

127. The Sheriff's Office's removal of the eviction from its official public website reinforced that deception and independently constitutes fraud.

128. Defendant McQueen used a fraudulent instrument, the quashed writ of possession, to justify the eviction and seize the property and its contents.

129. Defendants Vertex, Tessler, Tess Law, Schaffel, Shahbain, Alsamet and Alnisafi, acting jointly with the Sheriff's Office and through Defendant Tessler, falsely represented to Plaintiff that they had lawful authority to take possession of the property on March 18 by presenting a quashed writ at the eviction and in spite of notice failures.

130. Defendants made these false representations knowingly, intending for Plaintiff to rely on them. Plaintiff did rely on them and was harmed as a result. The purpose of the fraud was to

remove Plaintiff from the real property so Defendants could take prematurely possession of it and everything inside.

**COUNT XI**
**GROSS NEGLIGENCE**
*Maryland Common Law*
**(Against Defendants McQueen, Holman, Washington, Vertex, Schaffel, Tessler, Tess Law LLC, Shahbain, Alsamet and Alnisafi)**

131. The allegations set forth in all previous paragraphs are incorporated herein by reference.

132. Each Defendant identified in this Count failed to perform a manifest duty in reckless disregard of the consequences to Plaintiff's property rights as described below.

133. Defendant McQueen, as a Deputy Sheriff, owed a duty to execute only lawful process. He acted with gross negligence by using a quashed writ to execute the eviction and in the absence of notice required by law.

134. Defendant Washington, as a Sheriff's Office supervisor, owed a duty to ensure evictions were carried out lawfully and with proper notice. He acted with gross negligence by ordering, or failing to prevent, the unlawful eviction, and by repeatedly assuring Plaintiff the eviction was cancelled and then allowing it to proceed.

135. Washington and McQueen each acted with gross negligence by not referring potential notice violations to a Baltimore City judge when they realized the eviction was a surprise to Plaintiff, as required by 8B-3.

136. Defendant Holman was responsible for scheduling evictions for the Sheriff's Office and had a duty to schedule them lawfully and transparently. She acted with gross negligence by

telling Plaintiff the March 18 eviction was cancelled, then letting it proceed on that date anyway and without telling Plaintiff it was actually going to occur on March 18.

137. Defendants Vertex, Tessler, Tess Law, Schaffel, Shahbain, Alsamet, and Alnisafi owed a duty to comply with the statutory notice requirements. They acted with gross negligence by scheduling and executing an eviction in defiance of notice requirements.

138. Each Defendant's gross negligence was a direct and proximate cause of Plaintiff's injuries, including the loss of his real property, his business, his personal and business property, and the financial and emotional harm resulting from the unlawful eviction.

**COUNT XII**
**ABUSE OF PROCESS**
*Maryland Common Law*
**(Against Defendants McQueen, Holman, Washington, Vertex, Schaffel, Tessler, Tess Law LLC, Shahbain, Alsamet and Alnisafi)**

139. The allegations set forth in all previous paragraphs are incorporated herein by reference.

140. Defendants Vertex, Tessler, Tess Law, Schaffel, Shahbain, Alsamet, and Alnisafi used the eviction and writ of possession processes in ways the law does not permit. They scheduled and executed an eviction on a quashed writ and in defiance of the statutory notice requirements. Their goal was to make it harder for Plaintiff to defend his pending legal claims to reclaim title to the Property: by holding his seized belongings hostage to coerce him to abandon those claims, and by stopping his business to damage him financially so he could not effectively pursue his legal claims.

141. Defendant McQueen executed the eviction presenting a writ which had been quashed and under conditions he knew did not satisfy the statutory notice requirements.

142. Defendants Holman and Washington used the eviction scheduling process to deceive Plaintiff into believing the eviction had been cancelled, then allowed it to proceed on that date anyway. They removed the eviction from the official website residents rely on as part of the deception. They also scheduled an eviction that could not satisfy the statutory notice requirements.

143. Upon information and belief, the Sheriff's Office Defendants participated in the unlawful eviction in exchange for preferential career treatment or other benefits, else they would not have participated.

144. The Sheriff's Office's failure to file the legally required post-eviction paperwork is itself an abuse of process and reflects consciousness of guilt. It suggests the Office knows the eviction was unlawful and is avoiding the creation of a public record.

**COUNT XIII**
**CIVIL CONSPIRACY**
*Maryland Common Law*
**(Against Defendants McQueen, Holman, Washington, Vertex, Schaffel, Tessler, Tess Law LLC, Shahbain, Alsamet and Alnisafi)**

145. The allegations set forth in all previous paragraphs are incorporated herein by reference.

146. The surprise eviction could not have occurred without the private Defendants and the Sheriff's Office Defendants acting in concert. As the Sheriff's Office Defendants assured Plaintiff no eviction would take place on March 18, they planned the eviction with the private Defendants behind Plaintiff's back. Defendant McQueen and Defendant Tessler arrived at and executed the eviction together.

147. Overt acts in furtherance of the conspiracy include, but are not limited to: Holman's preferential scheduling of an eviction on that writ; Holman and Washington assuring Plaintiff the

eviction was cancelled; Defendants proceeding with the eviction anyway even though Holman and Washington knew Plaintiff believed the eviction was cancelled; Defendant Tessler arranging the eviction with the Sheriff's Office while that office was telling Plaintiff the eviction was cancelled; the coordinated arrival of Defendant McQueen and Defendant Tessler on the day of the eviction; Defendant's violation of their own internal policies to not execute an eviction before statutorily required notice requirements could be met; and Defendant Washington's refusal to stop the eviction once it was underway despite having the legal authority to do so.

148. On information and belief, each of the private Defendants knowingly participated in the conspiracy. Vertex set it in motion: on December 3, 2025, it sold the Property to Shahbain, Alsamet, and Alnisafi on the condition that a writ of possession be obtained, then, though it no longer held the deed, procured the January 23 writ in its own name and used it to schedule the March 18 eviction. Shahbain, Alsamet, and Alnisafi joined by purchasing on that condition, retaining Tessler, and authorizing him to obtain the March 4 writ in their names and take possession on their behalf; Tessler acknowledged on the record in the Baltimore City Circuit Court that he was acting as their agent. Within an hour of the January 23 writ being quashed, Tessler filed a new writ application that cited Vertex's deed rather than his clients' and mislabeled the exhibit as a "Judgement Awarding Possession"; on March 6 he mailed a notice that neither identified which clients intended to take possession nor stated the eviction date; on March 18 he arrived at the Property with Deputy McQueen; and afterward he conditioned the return of Plaintiff's belongings on Plaintiff abandoning his appeal. Tessler filed the writ applications and communicated with the Sheriff's Office through Tess Law LLC, and every act he took was within the scope of his employment by that firm. Each private Defendant stood to gain from the unlawful eviction: Vertex and Schaffel by keeping the $190,000 purchase price,

Shahbain, Alsamet, and Alnisafi by obtaining possession, and Tessler and Tess Law, on information and belief, by receiving a percentage of Vertex's profits — and, on information and belief, each authorized Tessler and Tess Law to pursue possession of the Property on March 18, 2026 on their behalf. Each is therefore liable for the acts of every other co-conspirator taken in furtherance of the conspiracy.

149. The knowing participation of Defendants Shahbain, Alsamet, and Alnisafi is further shown by what they paid for the Property. Ashland Auction Group auctioned the Property on Vertex's behalf in an online auction that ran from April 28 to April 30, 2025, drawing a high bid of $120,000. Yet the Ashland Auction Group contract of sale for the Property, dated May 12, 2025, twelve days after the auction ended, states a purchase price of $209,000 **(Exhibit 7)**, and the sale Vertex ultimately recorded to Shahbain, Alsamet, and Alnisafi on December 3, 2025 was for $190,000, more than double the State Department of Assessments and Taxation valuation of $85,000. Shahbain, Alsamet and Alnisafi paid $70,000 above the highest bid from the Ashland Auction. They Property remains vacant as of August 3, 2026. On information and belief, the premium they paid is a reflection of them entrusting Defendants Tessler, Tess Law and Vertex's commitment to deliver possession.

150. The desire to conceal the conspiracy is evident in the Sheriff's Office's response to public-records requests. The Sheriff's Office has denied requests for email records in response to multiple Maryland Public Information Act requests. It also has not filed the legally required post-eviction return paperwork with the Baltimore City Circuit Court.

151. As a direct result of Defendants' conspiracy, Plaintiff suffered the damages described herein, including the loss of his real property, his business, and his personal and business property.

## COUNT XIV
## CONSPIRACY TO DEPRIVE CIVIL RIGHTS, FOURTH AND FOURTEENTH AMENDMENTS
*42 U.S.C. § 1983*
**(Against All Defendants)**

152. The allegations set forth in all previous paragraphs are incorporated herein by reference.

153. The same conduct alleged in Count XIII constitutes a conspiracy to deprive civil rights under 42 U.S.C. § 1983.

154. The Sheriff's Office Defendants (Holman, McQueen, and Washington) are state actors; the private Defendants (Vertex, Tess Law, Schaffel, Tessler, Shahbain, Alsamet, and Alnisafi) acted under color of state law because they acted jointly with the state to deprive Plaintiff of his rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fausto Gomez respectfully requests that the Court:

(a) Award compensatory damages in an amount to be determined at trial but no less than $300,000;

(b) Award punitive damages in an amount to be determined at trial;

(c) Grant such other and further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury, under Federal Rule of Civil Procedure 38(b), on all issues so triable.

Respectfully submitted,

Fausto Gomez
Plaintiff Pro Se
9315 Oak White Rd.
Nottingham, MD 21236
443-627-0201
FaustoGomez3080@hotmail.com