IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FAUSTO GOMEZ,
Plaintiff,
v. Civ. No. MJM-26-1445
YISROEL ARYEH SCHAFFEL, et al.,
Defendants.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SEAL THE NAMES IN HIS LOCAL RULE 102.1(a)(ii) DISCLOSURE**

## I. INTRODUCTION

Plaintiff is filing his Local Rule 102.1(a)(ii) disclosure in full. Plaintiff asks only that the identities of person(s) who helped him stay off the public docket and away from Defendants. Learning the names of non-party, non-attorney helpers does nothing for Defendants' case. It does create a risk of retaliation and intimidation, with potential to jeopardize the integrity of the case. The public version lists every filing and whether any helper is an attorney with names redacted. The Court has the full unredacted version with names.

Plaintiff has not found a case that addresses anonymity for people identified under Local Rule 102.1(a)(ii). The cases below are cited to illustrate how courts weigh similar interests, not as direct authority.

## II. LEGAL STANDARD

A motion to seal must give "specific factual representations" and explain "why alternatives to sealing would not provide sufficient protection." L.R. 105.11. The Court must give public notice, consider less drastic alternatives, and state its reasons. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). The common-law right of access applies to all judicial records and gives way when "countervailing interests heavily outweigh the public interests in access." *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) (quoting *Rushford v. New*

*Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). The First Amendment right applies "only to particular judicial records and documents," such as summary judgment materials, and gives way to a compelling interest when the restriction is narrowly tailored. *Id.* at 266–67 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). The Court must decide which right applies to each document. *Stone*, 855 F.2d at 180–81. A list of people who helped a party is not filed in connection with any ruling on the merits, so the common-law standard applies. To the extent a document is not relevant to the adjudicative process, "no right of access applies." *Adjabeng v. GlaxoSmithKline, LLC*, No. 1:12-cv-568, 2014 WL 459851, at *1 (M.D.N.C. Feb. 5, 2014). The request meets either standard.

## III. ARGUMENT

### A. The names should be redacted from the public version.

The helpers are innocent non-parties. The Fourth Circuit weighs the risk of retaliatory harm to the requesting party "or even more critically, to innocent non-parties." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). "[P]ersonal information of third parties is often subject to protection, given the privacy interests at stake for individuals who are not part of the suit." *FTC v. Syngenta Crop Prot. AG*, 695 F. Supp. 3d 701, 706 (M.D.N.C. 2023) (quoting *Stevens v. Cabarrus Cnty. Bd. of Educ.*, No. 1:20-CV-335, 2022 WL 4620906, at *15 (M.D.N.C. Sept. 30, 2022)); *see Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000). The Fourth Circuit has approved redacting individuals' identities rather than "subjecting them to potential embarrassment or harassment." *Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267–68 (4th Cir. 2021). And protecting "the physical and psychological well-being of individuals related to the litigation . . . may justify restricting access." *United States v. Doe*, 962 F.3d 139, 147 (4th Cir. 2020) (quoting *United States v. Harris*, 890 F.3d 480,

492 (4th Cir. 2018)). Some of the helpers may also be called as witnesses. Disclosing their names now, to parties who have already sought leverage over people who helped Plaintiff, creates a risk of witness intimidation. Protecting "the privacy rights of trial participants such as victims or witnesses" is a recognized compelling interest. *Public Citizen*, 749 F.3d at 269. Courts also deny access where their files "might have become a vehicle for improper purposes," including to "gratify private spite." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (quoting *In re Caswell*, 18 R.I. 835, 836 (1893)).

Redacting names is the less drastic alternative courts use. "There is no question about the propriety of excising the name of the informant." *In re Knight Publ'g Co.*, 743 F.2d 231, 236 (4th Cir. 1984). Applying Local Rule 105.11, this Court refused to seal whole exhibits and held that non-parties could be protected "by redacting the names." *Jones v. Blair Wellness Ctr., LLC*, No. ADC-21-2606, 2023 WL 4352451, at *17 (D. Md. June 30, 2023); *see also Adjabeng*, 2014 WL 459851, at *2 (sealing only a non-party's name, which was "not important to the disposition of the case"); *Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 303 (D. Md. 2024).

The public loses nothing it needs. The public's legitimate interest is in knowing whether a lawyer is behind a self-represented party's filings. The public version answers that question for every filing.

**B. The risk of retaliation and intimidation is real.**

Retaliation rarely comes with an admission. "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). For that reason, "direct threats are not 'a strict condition precedent'" to sealing. *United States v. Doe*, 962 F.3d at 149 (quoting *United States v. Doe*, 870 F.3d 991, 999 (9th Cir. 2017)). The Supreme Court asks only for "a reasonable probability" of "threats,

harassment, or reprisals from either Government officials or private parties," and has rejected "unduly strict requirements of proof" in favor of "sufficient flexibility in the proof of injury." *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 93 (1982) (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)); *see Doe v. Reed*, 561 U.S. 186, 200 (2010). What is required is a record that makes the risk concrete rather than conclusory. *United States v. Doe*, 962 F.3d at 148. The Fourth Circuit has protected the identities of employees who gave information against their employer because each is "keenly aware of his dependence upon his employer's good will." *Wirtz v. B.A.C. Steel Prods., Inc.*, 312 F.2d 14, 16 (4th Cir. 1962) (informer's privilege). Retaliation through jobs, government contracts, and relatives is well recognized. *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 686 (1996); *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 714–15 (1996); *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174–75 (2011) (reprisal against a close family member).

The facts in Part IV meet this standard. The deputies' own union, a former major who is now Sheriff-elect, and an ordinary citizen all describe, by statement or allegation, a Sheriff's Office that uses its powers against people who cross it. Mr. Tessler has demonstrated he will, on behalf of his clients, seek to obtain leverage over nonparties to gain an advantage in his cases. For example, Mr. Tessler wrote to Plaintiff's first counsel that his client would pursue "every party that is accountable under Maryland law," and that counsel then stopped helping. Ex. B. Mr. Tessler later sought to buy a debt that Plaintiff potentially owed to another of his lawyers. ECF 30-1. Nothing would stop the same approach from being used against a helper who owes money, holds a City job, or has a relative who does.

**C. The names should go to the Court alone.**

Plaintiff recognizes that ex parte proceedings are "greatly disfavored." *RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 356–57 (4th Cir. 2007); *see United States v. Barnette*, 644 F.3d 192, 209–10 (4th Cir. 2011). *RZS* involved a court deciding the merits with one side absent and without notice. Here, Defendants have notice, can oppose this motion, and receive every part of the disclosure except names. In *United States v. Garrison*, 849 F.2d 103 (4th Cir. 1988), ex parte review was not reversible error where the material "neither contradicted nor added anything of substance." *Barnette*, 644 F.3d at 210 (quoting *Garrison*, 849 F.2d at 107). The same is true of names that bear on no claim or defense.

The factors this Court has used for ex parte, in camera review support the request. *United States v. Bryant*, 668 F. Supp. 2d 728, 731–33 (D. Md. 2009) (criminal detention; applying factors from *United States v. Abuhamra*, 389 F.3d 309, 332 (2d Cir. 2004); used here by analogy). (1) The interest is overriding: protecting non-parties from retaliation and potential witnesses from intimidation. In *Bryant*, the risk that disclosure "could result in witness intimidation" was "an overriding interest." *Id.* at 733 (quoting *Abuhamra*, 389 F.3d at 332). (2) The sealing is no broader than necessary: only names are withheld. (3) Alternatives were considered: attorneys'-eyes-only review is offered as a fallback, but Mr. Tessler is both a Defendant and counsel, and he engaged in the intimidating behavior described in Part IV. (4) The facts in Part IV support findings. (5) The substance is disclosed: Defendants receive every filing, every category of help, and every helper's attorney status. (6) Reliability is assured: the facts are sworn, and the Court may question Plaintiff.

The Fourth Circuit has protected identities from an opposing party where its "real purpose" was to find out who had helped the other side and it already had the substance of what

it needed. *Wirtz*, 312 F.2d at 16. That kind of protection gives way only where an identity is "relevant and helpful to the defense" or "essential to a fair determination of a cause." *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957). The helpers' names are neither. Disclosure to defense counsel would reduce the risk, but would not remove it, particularly where one defense counsel, Mr. Tessler, is himself a Defendant whose emails, described in Part IV, sought leverage over people who helped Plaintiff. The Supreme Court has long recognized that compelled disclosure of the people associated with a cause can expose them to "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958). Those cases involved membership and donor lists, not people who helped with court filings, but the concern is the same. Disclosure requirements can chill people "[e]ven if there [is] no disclosure to the general public," and "[w]hile assurances of confidentiality may reduce the burden of disclosure to the State, they do not eliminate it." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021) (quoting *Shelton v. Tucker*, 364 U.S. 479, 486 (1960)).

If the Court prefers attorneys'-eyes-only review, the Fourth Circuit has upheld limiting a non-party's identity first to the parties' lawyers, with disclosure to the parties only after a showing of relevance to their defenses. *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 246–47, 249 (4th Cir. 2009). Courts may also bar parties and their counsel from disclosing identifying information to anyone who has not signed a non-disclosure agreement. *Doe v. Mast*, 173 F.4th 524, 530, 539 (4th Cir. 2026) (upholding such an order covering plaintiffs and their family members). Mr. Tessler, as a Defendant, should not receive the names under any tier.

Any order can also be revisited. If a Defendant later shows that a helper's name is relevant to a claim or defense, the Court can order disclosure then, on whatever terms it sets. *See*

*Lefkoe*, 577 F.3d at 247 (affirming order that expanded disclosure of a non-party's identity after a showing of relevance); *Darden*, 736 F. Supp. 3d at 303 (granting pseudonym motion "without prejudice to reconsideration should circumstances change").

**D. The public interest favors redaction.**

Without help, a person who cannot get a lawyer is "in effect, denied access to the courts." *Johnson v. Avery*, 393 U.S. 483, 488 (1969) (prisoners). That is Plaintiff's situation. Legal Aid turned him away, and his first language is Spanish which handicaps his ability to navigate some court processes. ECF 72 itself treats translating and reviewing translations as help that must be disclosed. Publishing the names of people who give that kind of help, in a case against people with money and public power, discourages them from helping. Unlike the claim rejected as speculative in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609–10 (1982), this has already happened once in this dispute: Plaintiff's first counsel read an email from Mr. Tessler as a threat and then refused to assist Plaintiff further.

**E. Redaction does not prejudice Defendants.**

The helpers' names have "no direct substantive bearing" on any claim or defense. *Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 204 (S.D.W. Va. 2011). A central concern behind requiring disclosure of help is attorney ghostwriting, which "unfairly exploits" the lenient standard given to self-represented parties. *Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1078 (E.D. Va. 1997). The public version answers that concern by stating whether each helper is an attorney. Even when a court suspected attorney ghostwriting, it required the litigant to state only whether she was licensed, had legal training, or received substantial legal help, not to name anyone. *Wesley v. Don Stein Buick, Inc.*, 987 F. Supp. 884, 887 (D. Kan. 1997). Here, the Court will have every name.

## IV. FACTS SUPPORTING RISK OF RETALIATION, COERCION OR INTIMIDATION

### A. Plaintiff and the people who helped him

Plaintiff was unable to obtain free legal help. He asked Maryland Legal Aid for help, and it told him it could not help because the matter related to a business. Additionally, Plaintiff's first language is Spanish, which makes it more difficult for him to navigate court processes.

The people who helped him have ties to Baltimore City that leave them exposed. The person(s) who helped Plaintiff live, work, or do business in Baltimore City. They may seek work with the City or be under the authority of government officials connected to the Defendants.

The perceived threat of retaliation and intimidation is so great against Plaintiff's helper(s), that Plaintiff proposed Voluntary Dismissal Without Prejudice in ECF 73 & 77. While the Court said Plaintiff was free to voluntarily dismiss the case, it said it would pursue compliance with its local disclosure order regardless (ECF 80).

Retaliation, by definition, can't be proven in advance; and it is often hard to prove afterward. People who retaliate rarely admit it. A helper who loses a job, a contract, or a fair hearing will usually be given a reason that looks legitimate. Courts recognize this and accept circumstantial evidence of motive and risk. *Aikens*, 460 U.S. at 716; *Brown*, 459 U.S. at 93. The facts below are that kind of evidence: what others have alleged about the Sheriff's Office, what Defendant Schaffel has alleged about people implicated in this case, and what Mr. Tessler has done to gain leverage over people connected to Plaintiff.

### B. Allegations of retaliation, intimidation, and abuse by the Sheriff's Office

On April 28, 2026, Fraternal Order of Police Lodge 22, which represents the Sheriff's Office's sworn deputies, issued a press release opposing the then-Sheriff's re-election. It stated:

"Deputies describe a workplace run on fear and retaliation, in which many are reluctant to speak publicly about conditions inside the office." Ex. A. It effectively stated fear and the use of retaliation are part of the culture of the Sheriff's Office. If law enforcement officers, who have union protections, are fearful of speaking publicly, how much more so is the concern for ordinary citizens.

*Watson v. Maryland*, No. 1:26-cv-02039-GLR (D. Md.), shows what the Sheriff's Office is alleged to have done to an ordinary citizen. Watson alleges the Sheriff's Office effectively engaged in a campaign of harassment and destroyed his business as a favor to one of the Sheriff's Offices allies.

Watson rented properties on Airbnb. He alleges that within four days of the Sheriff taking office, after an ally of the Sheriff emailed the Sheriff, the office opened what its own records call a "criminal investigation" into a civil licensing matter, with no criminal complaint behind it. Compl. ¶¶ 25, 27. The office referred Watson to the City's housing department, kept passing it tips about his business, and ran a "joint investigation" with it. Id. ¶¶ 27–28, 39–40. One participant wrote, "I have more than enough to take down all of his properties." Id. ¶ 29. Watson alleges the campaign destroyed his business: his gross Airbnb earnings were $351,868.90 in 2022, fell to $16,754.57 by August 2023, and were $0.00 by September 2023. The office also petitioned for an extreme risk protective order against him. The petition cited his civil-rights complaints against the office as evidence he was dangerous, and it used a deputy's name without that deputy's consent. Id. ¶¶ 48–51. Deputies entered a family member's home without a warrant. Id. ¶¶ 58–60. The Sheriff personally called 911 to describe Watson while he was handing out political leaflets. Id. ¶ 66. A neighborhood figure said the claims that Watson was a criminal came from the Sheriff's Office. Id. ¶ 70.

In *Tapp-Harper v. Cogen*, No. 1:24-cv-2498 (D. Md.), a high-ranking Sheriff's Office official alleges that the Sheriff broke the law to punish her for complaining about him. She alleges that in September 2021 she filed an internal EEO complaint of race and gender discrimination, including claims against Samuel Cogen, then an Assistant Sheriff. In September 2022, the office settled her complaint by promoting her to Assistant Sheriff. She alleges that the next day, before he was elected, Cogen asked the sitting Sheriff to pause hiring and promotions. On November 30, 2022, the day he was sworn in, he placed her on administrative leave and suspended her police powers without notice or explanation. Shortly thereafter she was fired.[1]

In this case, Plaintiff essentially alleges the Sheriff's Office Defendants coordinated with the private Defendants to evict Plaintiff prematurely and by surprise; thereby depriving him of all the business property and personal within the real property, through use of their law enforcement powers. To use law enforcement powers to improperly deprive someone of tens-of-thousands of dollars' worth of property is extremely bold and intimidating behavior.

The common thread across these allegations, is the implication that powerful members of the Baltimore City Sheriff's Office will use their authority to hurt people who challenge them.

**C. Defendant Schaffel's allegations that people implicated in this case threatened and retaliated against him**

Defendant Schaffel, represented by Mr. Tessler, has himself alleged that people implicated in this case threatened and retaliated against him. In *Schaffel v. RPIP*, No. 1:25-cv-00721-RDB (D. Md.), Defendant Schaffel, represented by Mr. Tessler, alleges that people also

[1] Tapp-Harper defeated Sheriff Cogen in the 2026 election and is now Sheriff-elect. However, this does not guarantee alleged intimidation, and retaliation will suddenly evaporate from the Sheriff's Office. Nor does it guarantee certain individuals won't maintain or return to positions of power.

implicated in this case warned him of "severe consequences" when he questioned their conduct, and later spread false accusations about him among investors and in his community.

**D. Mr. Tessler's efforts to gain leverage outside the cases themselves**

Mr. Tessler has repeatedly tried to win disputes outside the courtroom, by pressuring those giving assistance to Plaintiff.

In October 2025, shortly after Plaintiff filed a notice of appeal for his Circuit Court case, Mr. Tessler wrote to Plaintiff's first counsel that his client would "seek every avenue of relief against every party that is accountable under Maryland law", unless Plaintiff dropped his state court appeal. Mr. Tessler said "We both know that your client's notice of appeal will certainly be stricken eventually, as it is fatally flawed on multiple fronts. My client intends to pursue every available recourse to be made whole. There are substantial damages in play." Ex. B. Plaintiff's counsel forwarded the email to Plaintiff and called. He was upset. He read the email as a threat to sue anyone involved, including himself, and said he would not help further.

Plaintiff proceeded pro se with the notice of appeal, and it was not stricken. Later, Plaintiff obtained a new lawyer; the appeal has been fully briefed and is pending before the Appellate Court of Maryland.

During the appeal, Mr. Tessler lodged multiple sanctions requests against the new lawyer. In August 2026, Mr. Tessler offered to stop pursuing sanctions against the lawyer in exchange for "a sale to us of the debt you hold against Mr. Gomez." ECF 30-1. On information and belief, the purpose was to get leverage over Plaintiff such that he would drop, or be less equipped to defend, the claims in this case.

In both instances, Mr. Tessler went after people helping Plaintiff to get leverage over Plaintiff and his claims.

**E. Federal prosecutors recently alleged abuse by a private party, an elected official, and a police officer working together, after a multi-year investigation**

Abuse by private parties, elected officials, and police working together can take years to come out, even for federal prosecutors. According to the indictment in *United States v. Attar*, No. 1:25-cr-00324-SAG (D. Md.), a Baltimore City delegate, her brother, and a Baltimore police officer hid recording devices in a political consultant's apartment in early 2020. The indictment alleges they used the recordings to pressure him not to speak against the delegate. It was not unsealed until October 30, 2025, more than five years later. Prosecutors have investigators, subpoenas, and wiretaps. Private plaintiffs and the people helping them have none of these. If the allegations are true, this kind of abuse by politically connected people does happen, and it is hard to prove even for the government. And proving it later does not undo it. The consultant lived through the intrusion and the pressure for years before anyone was charged, and an indictment, or even a conviction, does not give those years back.

**V. CONCLUSION**

Exposing the names of the people who helped Plaintiff, to the public or to Defendants, serves no legitimate purpose for the Defendants. It does create a risk of retaliation, intimidation, potential witness intimidation, and other forms of abuse that could challenge the integrity of the case.

The Court should seal the unredacted disclosure and make it available only to the Court. In the alternative, the Court should permit defense counsel of record, other than Mr. Tessler, to review it on an attorneys'-eyes-only basis, without sharing the names with any party.

**VERIFICATION**

I declare under penalty of perjury that the facts stated in Part IV of this Memorandum are true and correct to the best of my knowledge.

Respectfully submitted,

Fausto Gomez
9315 Oak White Rd.,
Nottingham, MD 21236
Faustogomez3080@hotmail.com
Plaintiff, pro se

**CERTIFICATE OF SERVICE**

I certify that on November 20, 2026, I mailed a copy of the foregoing to counsel of record via first-class mail.

Fausto Gomez